**EXHIBIT C**
**VERIFICATION THAT THE STATE OVERRIDES THE RECEIVER**

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region      Log No.                    Category  18
1.    SQ                            1.  07-01360
2. _____     2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| GOLDSTEI DARRYL | P-79097 | UN ASS | 1N001 LOW |

A. Describe Problem: _____

_____

_____

_____

RECEIVED
SEP - 4 2007
INMATE APPEALS BRANCH

_____

If you need more space, attach one additional sheet.

B. Action Requested: _____

_____

Inmate/Parolee Signature: _____    Date Submitted: _____

C. INFORMAL LEVEL (Date Received:  _____ )

Staff Response: _____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved: Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

APPELLAMYT REMAINS DISATISFIED AND SEEKS FURTHER IN SUCH A
REVIEW AND TO KNOW WHY THIS APPEAL IS BEING ANSWERED
UNTIMELY FASHION. APPEAL NUMBER CSQ-2-07-00095 remains unanswered

Signature: _____ Date Submitted: 6/14/07

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other    RECD JUN 26 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: JUN 20 2007    Due Date: JUL 05 2007
☒ See Attached Letter

Signature: Grove SAII 7/19/7    Date Completed: AUG 06 2007
Warden/Superintendent Signature: Jolene Russell  AUG 08 RECD  Date Returned to Inmate: 8-2-07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

APPELLANT REMAINS DISSATISFIED AND SUBMITS TO DIRECTOR LEVEL TO
EXHAUST ANY ADMINISTRATIVE REMEDIES.

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____
☐ See Attached Letter
Date: _____

CDC 602 (12/87)

0705719

STATEMENT OF THE FACTS

On October 12, 2006, appeallant was placed in the H Unit Holding cell
and subsequently placed in ASU. APPELLANT WAS NOT GIVEN A PROPERTY
SLIP PRIOR TO PLACEMENT IN ASU.

APPELLANT TOLD H UNIT STAFF THAT HE NEEDED HIS MEDICATION THAT WERE
IN HIS PROPERTY ( APPELLANT SUFFERS FROM A NUMBER OF SERIOUS
MEDICAL PROBLEMS WHICH REQUIRE DAILY MEDICATION INCLUDING BUT
NOT LIMITED TO CARDIOVASCULAR CONCERNS AND SEIZURES)

APPELLANT WAS TOLD HIS MEDICATIONS WOULD FOLLOW HIM THEY DID NOT
IN FACT APPELLANT WENT FOR OVER TEN DAYS WITH NO MEDICATIONS .

APPELLANTS LAW BOOKS WERE ALSO NOT IN THE ISSUED PROPERTY.

MAY 3 0 REC'D

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:    August 1, 2007

To:      Goldstein, (P79097)

From:    San Quentin State Prison (SQ)

Subject: SECOND LEVEL APPEAL RESPONSE
         LOG NO. CSQ- -07-01360

### ISSUE:

You state that you suffer from foot problems that limit your daily activities and cause severe pain and discomfort.

You request to be seen by an orthopedic surgeon and allowed to purchase shoes compatible with your medical condition.

### INTERVIEWED BY: B. Hansen, RN

Your appeal was DENIED at the FLR and the response at the FLR is as follows: This ADA appeal is a duplicate of log# CSQ-2-07-00095 (This appeal regarding your eye surgery and podiatrist appointment was partially granted 5/29/07).

In requesting a Second Level Review, you state that you are dissatisfied and are seeking further review of your ADA appeal.

You are encouraged to use the sick call process by completing a Request for Health Services (CDC 7362) to request an appointment with a clinician to address your concerns. These forms are available from medical staff. If you are not satisfied with the medical care you are provided at California State Prison – San Quentin, you are encouraged to utilize the inmate appeals process, which is described in the California Code of Regulations, Title 15. This process is an integral part of the administrative remedies available for the inmates to resolve issues concerning any departmental decision, action, condition, or policy that they can demonstrate has had an adverse effect upon their welfare.

### SECOND LEVEL RESPONSE:

**DECISION:** For the reasons cited above, your appeal is DENIED. This appeal is being treated as a duplicate of log#2-07-00095.

You are advised that this issue may be submitted for a Director's Level of Review if desired.

*Jayne Russell*

Jayne R. Russell, M.Ed., CCHP-A
Program Manager
Office of the Receiver

JR:sg
cc:  Appeal File
     Central File

San Quentin State Prison
Appeal CSQ- -07-00
Inmate name/number
Page 2

REGULATIONS:  The rules governing this issue are:

**California Code of Regulations, Title 15, Section (CCR) 3350.  Provision of Medical Care and Definitions.**

(a) The department shall only provide medical services for inmates which are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists. Treatments for conditions which might otherwise be excluded may be allowed pursuant to section 3350.1(d).

(b) For the purposes of this article, the following definitions apply:

(1) Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care.

**CCR 3354.  Health Care Responsibilities and Limitations.**

(a) Authorized Staff. Only facility-employed health care staff, contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted, within the scope of their licensure, to diagnose illness or, prescribe medication and health care treatment for inmates. No other personnel or inmates may do so.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

### INMATE APPEALS BRANCH

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



September 25, 2007

GOLDSTEIN, DARRYL, P79097
California State Prison, San Quentin
San Quentin, CA  94964

RE: IAB# 0705719    SQ-07-01360    ADA

Mr. GOLDSTEIN:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal is cancelled.

This appeal is a duplicate of another appeal reviewed at the Director's Level of Review, IAB log # 0616067, Institution log # CSQ-2-07-00095. Therefore, this appeal is cancelled at the Director's Level of Review.

*(signature)* W. Brani

N. GRANNIS, Chief
Inmate Appeals Branch

---

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

DARYL LEE GOLDSTEIN
P-79097 1 North 001 Lower
CSP, SAN QUENTIN
San Quentin, Ca
94964

**PETITIONER PRO PER**


IN THE COURT OF APPEAL STATE OF CALIFORNIA
FIRST APPELLATE DISTRICT
DIVISION TWO


IN RE DARRYL LEE GOLDSTEIN

    On Habeas corpus

_____

Case No_____
Decration of Raynell
Carmichael In Support of
Petitioner's Opposition
Respondent's informal Reply
To Petition For Writ of
Habeas corpus.


    I **RAYNELL CARMICHAEL**, hereby declare and state as follows:

**1. Iam a prisoner within the California Department of Corrections and Rehabilitation** , presently housed at San Quentin State prison.

2. I suffer from a litany of serious medical problems that treatment has been denied , delayed and obstructed by prison officials.

3. I am considered a **High Risk** medical patient based on my serious medical problems.

4. Over the months I have sought appropriate medical care and treatment through the inmate appeal system, to no avail.

5. That my primary care Physician assigned to my Housing Unit generally follows the suggestions of the Housing custody staff ( i.e. Unit Sgt  Unit Lt.), these suggestion are usually about lower tier housing bottom bunk chronos's, decisions of how many inmates to be seen by medical staff based on the number of correctional officials available to monitor sick call lines, Dr lines.

6. That Iam informed and believe that although the Federal Receiver
has been appointed by the Federal District Court the day to
day medical care and treatment including appeals , outside consul
tations , medical transfers , medical holds remain under the
exclusive direction and supervision of San Quentin  Medical
and custody staff.

7. That since the appointment of the Federal Receiver, I have
written a number of letters to that Office , to no avail.

8. That the only response that I was ever provided was a form
letter directing me to the Prison Law  Office.However, the Prison
Law Office has been unable to assist me until such time any
administrative remedies have been exhausted.

9. I have also written to the Receiver's Program Manager here
at San Quentin  and have never received a received  a reply
to date .

10. As a prisoner here at San Quentin State Prison I have
personal knowledge that based on the extremely large number
of prisoners  appropriate medical care and treatment can not
be assured without a prisoner seeking and obtaining judical
relief through as process such as the instant.

11. Even though I am a High Risk patient and the Receiver has
been appointed , my medical appeal was not answered in a timely
fashion , which cause for me to seek habeas corpus relief in
the Marin County Superior Court .

(2)

12. That action was terminated by the Marin County Superior Court based on a request by the Respondents in this action making the same argument as they did to this Court.

13. That attached hereto is a copy of the pleadings from Marin Count Superior Court Habeas Corpus  Number SC 152878 A.

14. That although my appointed counsel at that time Charles Carbone wrote to the appropriate medical staff and sent copies to Mr Silen , the Fedeeral Receiver , appropriate care was still not provided.

15. Since the Marin County Superiro Court revoked the Order to Show Cause, may medical condition has become much worse . I have been taken to outside hospital three different times

I declare under the penalty of perjury that tehforegoing is true and correct and that this Declaration was executed at San Quentin State Prison on October 8, 2007


*Raynell Carmichael*
Raynell Carmichael
Declarant

**RESPONDENT'S OPPOSITION TO  PETITION FOR WRIT OF HABEAS CORPUS , FIRST DISTRICT COURT OF APPEAL STATE OF CALIFORNIA**



**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA  94102-7004

Public:  (415) 703-5500
Telephone:  (415) 703-5741
Facsimile:  (415) 703-5843
E-Mail:  Amanda.Murray@doj.ca.gov

October 18, 2007

The Honorable Justices of the Court of Appeal
First Appellate District, Division Two
Court of Appeal of the State of California
350 McAllister Street
San Francisco, CA  94102

RE:     *In re Darryl Goldstein*, On Habeas Corpus
        Court of Appeal of the State of California, First Appellate District, Case No. A118925

Dear Justices of the Court of Appeal:

Respondent Robert L. Ayers, Jr., Warden at San Quentin State Prison, respectfully requests that the Court certify for publication its decision filed on October 2, 2007. (Cal. Rules of Court, rule 8.1120(a)(1).) Warden Ayers makes this request because the decision involves a legal issue of continuing public interest and creates an apparent conflict in the law as applied by California superior courts. (Cal. Rules of Court, rule 8.1105(c)(5) & (6).)

Goldstein filed a pro se habeas corpus petition alleging that the California Department of Corrections and Rehabilitation (CDCR) failed to provide him with adequate medical care and treatment. Respondent argued that, because the federal court has asserted authority over CDCR's health-care system by appointing a federal Receiver, the federal court – not the state court – controlled resolution of Goldstein's medical claims.[1] Accordingly, respondent asserted that the Receiver – not CDCR – was the appropriate respondent and any response by CDCR would be improper.

This Court denied Goldstein's petition "on the ground that the only party that can provide the relief petitioner seeks, the federal Receiver, is neither a party to this proceeding nor subject to state judicial authority."[2] (Opn. at p. 6.) The Court noted a conflict between the federal Receiver's overarching control over CDCR's medical care system – intended to protect inmates' right to adequate medical care – and his refusal to investigate individual medical complaints. (*Id.*

---

1. The Honorable Thelton E. Henderson appointed the federal Receiver, in *Plata v. Schwarzenegger*, U.S. District Court, Northern District of California, No. C-01-1351.

2. See Cal. Rules of Court, rule 8.264, subd. (a)(2).

First Appellate District
October 18, 2007
Page 2

at p. 5.)  In effect, the Court found a *"catch-22:"* the Northern District Court's rulings divested CDCR of control over the prisons' medical care system and deprived the state courts of jurisdiction, yet allowed the Receiver to avoid confronting allegations of inadequate medical care.  (*Ibid.*)  Concluding it lacked jurisdiction, this Court advised Goldstein to communicate his concerns to the federal court.  (*Ibid.*)

Thus, until the Northern District Court clarifies the conflict between the Receiver's control over CDCR's medical system and his refusal to address individual medical claims, the question of state court jurisdiction remains open to individual state court interpretation.  For example, a state court order directing CDCR to provide medical care places the prisons' medical staff in the conflicting position of possibly being held in both state- and federal-court contempt, and forcing them to act outside the scope of their employment under the Receiver and the directives of the federal court.  Indeed, in *In re Jon Willard,* Judge Verna A. Adams of the Marin County Superior Court determined that the federal Receiver did not preclude the court from exercising jurisdiction over Mr. Willard's medical claims *"pending direction to the contrary from a higher court."*  (Ex. A, Minute Order, dated September 28, 2007 (emphasis added); Ex. B, Reporter's Transcript of Proceedings, dated September 25, 2007, at p.11:24-27.)  The court denied the respondent's motion for dismissal and ordered a contempt hearing.  (Ex. A; Ex. B at p. 12:1-15.)  However, Judge Faye D'Opal – also in Marin County – reached the opposite conclusion and ruled that the court did not have jurisdiction to adjudicate the inmate's medical claims because the prison's medical system was under the management and control of a federal court-appointed receiver.  (Ex. C, *In re Goldstein,* Order Vacating Order to Show Cause, dated August 22, 2007.)  Thus, the superior courts require this Court's guidance regarding adjudication of state inmates' medical claims to avoid inconsistent and conflicting results.

Moreover, it is in the public's interest to have jurisdictional uniformity in the superior courts.  Otherwise, the result would be disparate treatment among inmates – some courts will hear an inmate's claims for inadequate medical treatment while others will not.  Such uniformity may also encourage the Northern District Court to review the federal Receiver's control of individual medical claims and ensure inmates receive proper medical treatment.

Accordingly, this court should grant the request for publication because it meets the criteria for publication: the Court's decision involves a legal issue of continuing public interest and creates an apparent conflict in the law as applied by California superior courts.

Sincerely,

AMANDA J. MURRAY
Deputy Attorney General
State Bar No. 223829

For    EDMUND G. BROWN JR.
      Attorney General

# EXHIBIT A

```
J2411H1                    SUPERIOR COURT CRIMINAL              09/28/07
MARIN CJIS             IN AND FOR THE COUNTY OF MARIN             11:18
ORGANIZATION: SC
```

CASE NO. SC142105 A       DATE: 09/25/07      TIME: 09:00 AM     DEPT.: H

PEOPLE VS. WILLARD, JON
BOOKED AS:

JUDGE:   VERNA A ADAMS, JUDGE          CLERK:   MS GARDNER
REPORTER: SUSAN FITZSIMMONS            BAILIFF:

NATURE OF PROCEEDINGS: HABEAS CORPUS

CHARGES: 1. PC 1474

DEPUTY ATTORNEY GENERAL PATRICIA HEIM APPEARED.

ALISON HARDY PRESENT FOR PETITIONER.

MARTIN DODD PRESENT FOR RECEIVER.

DISCUSSIONS HELD REGARDING DEPT. OF JUDTICE REQUEST TO
     DISMISS OR STAY PROCEEDINGS PENDING COURT OF APPEAL
     JUDGMENT ON THE SCOPE OF RECEIVER'S RESPONSIBILITIES.

THE COURT MAKES THE FOLLOWING FINDINGS AND/OR ORDERS:

PENDING DIRECTION TO THE CONTRARY FROM A HIGHER COURT,
     COURT DETERMINES THAT RECEIVERSHIP DOES NOT PRECLUDE
     COURT FROM EXERCISING JURISDICTION IN MR. WILLARD'S CASE

COURT DENIES RESPONDENT'S MOTION FOR DISMISSAL OR STAY.

PETITIONER TO FILE OSC RE: CONTEMPT.

DEFENDANT ORDERED TO APPEAR ON 11/13/2007 AT 10:00 A.M.
     IN SUPERIOR COURT, D- H FOR HABEAS CORPUS.

DISTRICT ATTORNEY TO PREPARE TRANSPORTATION ORDER.

ENTERED ON CJIS BY TG, DATE 09/28/2007.

PAGE   1

# EXHIBIT B

1

1   IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          IN AND FOR THE COUNTY OF MARIN

3              ---oOo---

4 HON. VERNA A. ADAMS, JUDGE          DEPARTMENT J

5

6 In re                )
                       )
7   JON WILLARD (P-74280),        )
                       )  No. SC142105A
8          Petitioner, )
                       )
9 On Habeas Corpus.            )
_____)

10

11

12

13      REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          SEPTEMBER 25, 2007

15

16

17

18 APPEARANCES:

19 For the Petitioner:        ALISON HARDY
                   Attorney at Law
20                   Prison Law Office
                   General Delivery

21          San Quentin, California

22  For the Respondent Warden:    HON. EDMUND G. BROWN, JR.
                    Attorney General
23                  By: PATRICIA HEIM
                    Deputy Attorney General
24
    For the Receiver Robert Sillen:  MARTIN H. DODD
25                  Attorney at Laws
                    160 Sansome Street
26                  San Francisco, California

27  Reported by:
    SUSAN L. FITZSIMMONS
28  CSR No. 4369
                              2


1  TUESDAY, SEPTEMBER 25, 2007          10:10 O'CLOCK A.M.

2              ---oOo---

3      THE COURT:  Okay.  In Re Willard.  And thank you for

4  your patience.

5      Miss Hardy is here for Mr. Willard.  And Miss Heim

6  from the Attorney General's Office.  And --

7      MR. DODD:  And I'm Martin Dodd, your Honor, attorney

8  for the Receiver.

9      THE COURT:  Mr. Dodd, I got your letter.

10      MR. DODD:  There's a -- there's a face to go with

11  the name.

12      THE COURT:  Yes.  Your letter, very scholarly.  Lots

13  of footnotes.

14      I had a couple questions.  When's Mr. Willard's

15 expected release date?

16      MS. HARDY:  Your Honor, he has about six more years

17 to serve.

18      THE COURT:  Six years, okay.

19      All right.  And Mr. Dodd, my question of you is,

20 when is this Court of Appeal jurisdiction question that

21 they're now addressing going to be addressed?  I know you

22 don't really know but --

23      MR. DODD:  Well, I --

24      THE COURT:  -- give me an educated guess.

25      MR. DODD:  I -- I don't know.  All I know is that at

26 least in the Second DCA, the briefing on that issue has -- has

27 been complete, I think for about three months already.

28      THE COURT:  M-hm.

                              3

1      MR. DODD:  I understand -- in fact, I think I just

2 learned the other day that apparently there is a similar case

3 pending in the Third District now, as well as this case, that

4 is in another courtroom in -- in this Court, that's kind of

5 gone up and down between -- between the Superior Court and the

6 First DCA.

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt

7        So the answer is, somebody's going to make a

8  decision about this some time, one hopes as soon as possible.

9  Frankly, I -- I'm a little surprised that neither the Attorney

10  General nor the -- the Prison Law Office have gone to Judge

11  Henderson about this question, but be that as it may,

12  somebody's -- some Court is going to make a decision, one

13  hopes, that will have statewide application, and then, you

14  know, we won't have to be running around from Superior Court

15  to Superior Court throughout the state saying, you know, "Is

16  there jurisdiction, is there not jurisdiction?"  But that's

17  the situation we're in at this point.

18        THE COURT:  All right.

19        MR. DODD:  Meanwhile, the Receiver is taking these

20  cases in and is reviewing them and is responding, to the

21  extent that it's possible and that he's got information, you

22  know, to provide.

23        THE COURT:  I understand.  Okay.  Thank you.

24        All right.  Miss Heim, I haven't heard from you yet.

25  I take it your position is that the Court should either

26  dismiss this or stay proceedings until we hear from the Court

27  of Appeal?

28        MS. HEIM:  That's correct.

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt

4

1    THE COURT:  And it's always hazardous for one person

2  to tell another person what -- how that other person views the

3  issues, so if there's anything else you want to say, please

4  say it.

5    MS. HEIM:  That was actually very succinct, that the

6  Attorney General's position at this time is that we feel that

7  the current Respondent no longer has control over the medical

8  care system, therefore they really can't provide the requested

9  relief that has been the subject of the initial petition in

10  this matter.

11    THE COURT:  I see.

12    Mr. Dodd, what's your view, if any, on this argument

13  that the Respondents no longer have control over the medical

14  delivery system?

15    MR. DODD:  Well --

16    THE COURT:  As a Special Master --

17    MR. DODD:  Well --

18    THE COURT:  -- decide to go to prisons and start

19  handing out pills, or what?

20    MR. DODD:  No, of course not.  And the Receiver --

21    THE COURT:  That's what I thought.

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt (5 of 18) [10/16/2007 2:55:02 PM]

22      MR. DODD:  The Receiver is undoubtedly in charge of

23  the medical care throughout the prison.  That said, the

24  Respondents in these cases, of course, are the Wardens, that's

25  by statute, and the -- well, undoubtedly the Receiver

26  ultimately will make decisions with regard to hiring, firing,

27  the -- the process and procedures in -- in medical care.

28      That's still -- you know, has seemed to us a

                                    5

1  somewhat separate question from whether the Attorney General

2  would actually represent people in the prison.  The Attorney

3  General has made its position very clear, and -- and as I put

4  in my letter, indeed there's an argument to be made that to

5  the extent the Receiver is the Respondent -- somebody has to

6  ask Judge Henderson before the Receiver becomes the

7  Respondent, but -- so it's -- I think this is a situation that

8  frankly no one has ever addressed before, and certainly the

9  orders out of Judge -- out of Judge Henderson's court, as

10  thorough as they might have been, I don't think addressed this

11  question at all.

12      And that's why -- and frankly, from our perspective,

13  we would prefer not to have to run around from Superior Court

14  to Superior Court, because that takes resources that the

15  Receiver would rather extend in addressing the crisis in the

16  prisons in the medical care system, rather than having to --

17  to deal with one Respondent at a time.

18         To the extent that -- to the extent that we have to

19  do that, we will, but we would rather not because there are --

20  you know, it's more effective ultimately for the Receiver to

21  try to address the systemic problems, and -- and, you know, if

22  there are personal issues of particular individuals that

23  require intervention, the Receiver is not saying he will not

24  do that, in fact, I suspect that he will, and -- because he

25  has a medical staff that he sends these claims through.

26         So I'm not sure that really answers the Court's

27  question, but it's -- I will be honest, this is a dilemma, and

28  it's a dilemma of resources, and there isn't -- there is a big

                                   6

1  question as to whether this Court has jurisdiction because,

2  after all, the system is in receivership, and it's in a --

3  it's under the control of a Federal Judge.  So one could argue

4  that there's an inconsistency between having individual

5  prospective relief in the face of the appointment of a

6  Receiver and -- and the kind of system-wide work that the

7  Receiver is trying to do.

8      So, as I said, I'm not sure that really answers the

9  Court's question, but it's a -- it is a puzzle.

10      THE COURT:  There isn't a simple answer.

11      Miss Hardy --

12      MS. HARDY:  Your Honor, there is a --

13      THE COURT:  -- I haven't heard from you yet.

14      MS. HARDY:  There is a -- an existing order, it's

15  called the stipulation for injunctive relief, which has been

16  presented to you, which states specifically that the class

17  relief afforded in the Plata case does not preclude prisoners

18  from pursuing their own remedies for individual claims under

19  habeas corpus, and that's Paragraph 29 of the stipulated --

20  the stipulated injunction in the case.

21      The -- that part of the order has not changed,

22  nobody has modified it.  Although there have been

23  modifications to the stipulation in light of the Receiver's --

24  in light of the receivership, that -- that portion has not

25  been touched.

26      And so in light of that portion of the injunction,

27  and in light of the fact that there have been no orders -- or

28  there have been no decisions that have statewide application,

7

1  at this point I believe that this Court has the authority and

2  jurisdiction to go forward to enforce the orders that it's

3  already made in these cases.

4      The Receiver is setting up some processes, we are

5  told, that will address individual claims in some cases, and

6  according to what he filed -- I'm sorry, what Mr. Dodd filed,

7  it says that when prisoners contact the Receiver, about 20

8  percent of those cases are -- have further inquiry, and a very

9  small number, that involve life -- potentially life

10  threatening circumstances, they'll take specific action.

11      That leaves people like Mr. Willard in -- in quite a

12  quandary.  He's got six more years of prison, he has a chronic

13  condition, that may progress to becoming life threatening at

14  some point, but at this point it's not life threatening, it's

15  just a chronic condition that's painful and very unpleasant,

16  and requires close monitoring, and he's not getting it.

17      If this Court is taken away from him as a place

18  where he can seek relief, I don't know what else he has.

19      MR. DODD:  My -- my --

20      THE COURT:  Any further argument --

21      MR. DODD:  Well, it's not too --

22      THE COURT: -- or points to be made?

23      MR. DODD: -- much of an argument, your Honor, as --

24 as perhaps Miss Hardy and I have a somewhat different view of

25 Paragraph 29 of that order.  I think if you read it, you won't

26 find word one about --

27      THE COURT:  Paragraph 29 of which order?

28      MR. DODD:  It's the stipulated injunction in June of

                                    8

1 2002, which was about --

2      THE COURT:  I don't even have a file endorsed copy

3 of it -- oh, here's the findings of fact and conclusions of

4 law.

5      MS. HARDY:  I'm sorry.

6      THE COURT:  Okay.  Go ahead.

7      MR. DODD:  Well --

8      THE COURT:  I think I found it.

9      MR. DODD: -- my -- my point about that -- that

10 order is that it -- it preceded the receivership by about

11 three and a half years.  And -- and it speaks in terms of not

12 setting up the order as res judicata or collateral estoppel,

13 and I -- the Prison Law Office, Mr. Willard's counsel, have

14 construed that as meaning that individual claims can go

15  forward.

16      Perhaps that is what it means.  I -- it certainly --

17  it's certainly not obvious on its face, and that's, as I said,

18  one reason why I'm a bit surprised that no one has asked Judge

19  Henderson what he meant by that order.

20      So I just -- I just note that, that it preceded the

21  receivership.  So to the extent that the imposition of the

22  receivership may have sort of implicitly or explicitly changed

23  that -- that provision as well, if it means -- even if it

24  means what Miss Hardy says it means, someone presumably ought

25  to be asking Judge Henderson, I would think.  But no one's

26  done that.

27      THE COURT:  Have you thought about doing that,

28  Mr. Dodd?

                                9

1      MR. DODD:  Certainly we have.  And we've -- I will

2  share -- I will share with this Court that, in fact, I -- I'm

3  sure that Judge Henderson wouldn't be all that thrilled to

4  have -- I'm sure Judge Henderson will not be thrilled with the

5  idea of having -- having individual petitioners come before

6  him either.

7      So, once again, we're in a -- in a bit of a --

8     THE COURT:  I understand.

9     MR. DODD:  -- in a bit of a quandary.

10     MS. HARDY:  Your Honor, if I may, I -- I believe

11   also -- I did want to say that I think it's a bit of a fiction

12   for the defendant -- or the Respondents in this case to say

13   that they're not in charge of medical any more.

14       As an overall systemic matter, the Receiver has been

15   placed so that he can develop a constitutionally adequate

16   system for medical care.  But the day-to-day functioning of

17   the -- of the prisons and the medical care system is still

18   being run by the Wardens.  I think, as you recognized, that

19   the Receiver's not handing out pills.

20       If Mr. Willard needs to go to San Francisco to get

21   an MRI, it is not the Receiver's office who arranges for that,

22   it is the office techs at Mule Creek State Prison, under the

23   doctors and health care managers who are directing that.  And

24   so, as a practical matter, Respondents still are very much

25   involved in providing Mr. Willard his care, or not.

26     MS. HEIM:  And in response to that, I would just add

27   that actually the -- sort of what makes this issue so sticky

28   is that the medical staff is under the auspices now of the

10

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt

1  Receiver, not of the Warden or of the Secretary of CDCR,

2  that's the issue.

3      Of course, the Warden is still in custody of all of

4  the inmates that are in CDCR.  However, the medical staff are

5  being directed by the Receiver, who is trying to make great

6  systemic change.  They are not controlled within the -- the

7  traditional framework any more.  This is -- this is the issue.

8  It has changed significantly, and will continue to change, and

9  really there is no way of predicting, at this point, where

10  this is going.

11      And unfortunately, you know, the staff would

12  probably love to continue to follow the direction of anyone

13  who's giving them direction, but they have, at this point, the

14  duty to follow the Receiver and the Receiver's instructions,

15  and that is still in flux.  That is being developed.  There is

16  a plan of action that has been submitted, and those plans will

17  simply need to develop as further and further information is

18  gleaned and the system is changed.

19      MR. DODD:  And -- and for what it's worth, your

20  Honor, to a large extent, they're both right.

21      THE COURT:  Thank you.

22      Is the matter submitted?

23     MS. HEIM:  Yes.

24     MR. DODD:  Yes.

25     MS. HARDY:  Yes, your Honor.

26     THE COURT:  I'm sure this will all be reviewed by a

27  higher authority.  I have nothing but respect for Judge

28  Henderson, who taught me when I was a student in law school,

                                11

1  and has gone on to a distinguished judicial career, and if I

2  am wrong here, I'm sure I will be corrected by appropriate

3  higher authorities.

4        I'm certainly not acting in defiance of the Court of

5  Appeals or of the Federal Court in this case.  However, I

6  don't believe -- just from where I'm sitting looking at this

7  as the Judge assigned to this particular one case involving

8  one inmate, I do not believe that the Plata injunction means

9  that the medical personnel of the California Department of

10  Corrections and Rehabilitation can abdicate their

11  responsibility for the day-to-day care of prisoners in their

12  care.  For that to happen, a lawsuit, which was intended to

13  improve the plight of ill prisoners, would greatly worsen it,

14  creating a vacuum whereby the prisoners have nowhere to go to

15  get medical care.

16      Certainly I'm not expecting the Receiver to micro-

17  manage the day-to-day medical care for ill prisoners in the

18  prisons, I think that would be a preposterous task to assign

19  to that Receiver, and one that I don't think the Receiver

20  probably views as being within the purview of his

21  responsibilities, which are to create a constitutionally

22  sufficient system for the delivery of medical care to

23  prisoners in California.

24      That said, I do not believe that the injunction

25  precludes this Court from exercising jurisdiction in

26  Mr. Willard's case, and I'm not going to dismiss or stay these

27  proceedings unless I'm told to do so by a higher Court.

28      If the statements made by Ms. Hardy in her letter to
                                    12

1   the Court of September 18th, 2007, had been made under oath, I

2   think it would be grounds for an order to show cause re

3   contempt directed to the medical staff of Mule Creek State

4   Prison, and if you wish to file an order to show cause re

5   contempt, I will set it for a hearing.

6       Are you planning to do that?

7       MS. HARDY:  Yes, your Honor.

8       THE COURT:  All right.  The hearing will be -- how

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt

9  long do you think it will take?

10      MS. HARDY:  One day, your Honor.

11      THE COURT:  All right.  How about -- hmmm, how about

12  November 13th?

13      MS. HARDY:  That's fine, your Honor.

14      THE COURT:  Okay.  Tuesday, November 13th,

15  10:00 o'clock, in this Department.

16      Mr. Willard is ordered to be here.  The Marin County

17  District Attorney is ordered to prepare a transportation order

18  so that he will be here.  Thank you.

19      MS. HARDY:  Thank you, your Honor.

20      (Whereupon, at the hour of 10:26 o'clock a.m.,

21       the proceedings were concluded.)

22           ---oOo---

23

24

25

26

27

28
                          13

1          REPORTER'S CERTIFICATE

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt

2

3  STATE OF CALIFORNIA        )
                          )  ss.
4  COUNTY OF MARIN           )

5

6       I, SUSAN L. FITZSIMMONS, CSR No. 4369, do hereby

7  certify that I am an official shorthand reporter of the

8  Superior Court of the State of California, in and for the

9  County of Marin, and that as such I was present and reported

10  in stenotype the proceedings had in the within-entitled matter

11  at the time and place therein set forth, consisting of the

12  proceedings held on September 25, 2007 consisting of 12 pages,

13  and that the same is a full, true and correct transcription of

14  said stenotype notes as taken by me in said matter.

15       DATED:  San Rafael, California, this 16th day of

16  October, 2007.

17

18

19       _____

       SUSAN L. FITZSIMMONS, CSR NO. 4369
20

21

22

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt (17 of 18) [10/16/2007 2:55:02 PM]

file:///C|/Documents%20and%20Settings/STEVENS/Desktop/WillardWrit092507.txt

23

24

25

26

27

28

# EXHIBIT C

FILED

AUG 22 2007

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: V. Orellana, Deputy

1

2

3

4

5

6

7

8

SUPERIOR COURT OF CALIFORNIA

9

COUNTY OF MARIN

10

IN RE DARRYL GOLDSTEIN

11                                         Case No.: SC 151759A

12            Petitioner

              **ORDER VACATING ORDER TO SHOW
13  On WRIT OF *HABEAS CORPUS*            CAUSE, VACATING APPOINTMENT OF
              COUNSEL, VACATING FILING/HEARING
              DATES, AND DENYING PETITION FOR
14            WRIT**

15

16  The California Court of Appeal, First Appellate District, Division

17  Two, August 1, 2007 Order to Show Cause issued is hereby vacated.

18  Because the California Department of Corrections and Rehabilitation's

19  Division of Health Care Services is under the management and control

20  of a federal court-appointed receiver,[1] this court has no jurisdiction

21  to address the claims asserted the May 9, 2007 petition for writ of

22  habeas corpus filed by petitioner in the above referenced appellate

23  court, case number A117652.

24

25  [1] See Order Appointing Receiver, United States District Court for the Northern
    District of California, Exhibit B to the August 22, 2007, Respondents'
    Request to Vacate Order to Show Cause.

                Order Appointing Counsel and Calendaring Hearing    1

1       The August 14, 2007 Order Appointing Counsel and Calendaring Matter

2   for Hearing filed in this court and served on all interested parties

3   is hereby vacated.   The filing dates and hearing dates set forth in

4   the August 14th Order are hereby vacated.   The Prison Law Office is

5   relieved from serving as appointed counsel for Petitioner Goldstein.

6       Petitioner may present his concerns to the California Prison

7   Health Care Receivership Corp., Office of the Receiver, 1731

8   Technology Drive, Suite 700, San Jose, CA 95110.   Kristina Hector is

9   the Inmate Patient Relations Manager for the Office of the Receiver.

10  Accordingly, on the ground stated above, the May 9, 2007 petition for

11  relief in habeas corpus filed by petitioner in the above referenced

12  appellate court, case number A117652, is denied.

13

14  Date:  August 22, 2007

15                                          Faye D. Opal, Judge

16

17

18

19

20

21

22

23

24

25

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **In re Darryl Goldstein**

No.:   **A118925**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **October 18, 2007**, I served the attached

### REQUEST FOR PUBLICATION

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Darryl Lee Goldstein**                              **First District Appellate Project**
**P-79097**                                           **730 Harrison Street, Suite 201**
**San Quentin State Prison**                          **San Francisco, CA 94107-1271**
**1 Main Street**
**San Quentin, CA 94964**
in pro per

**Prison Law Office**
**2173 East Francisco Blvd., #M**
**San Rafael, Ca 94901**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **October 18, 2007**, at San Francisco, California.

| | |
|---|---|
| M.M. Argarin | _Al. dl. Azmi_ |
| Declarant | Signature |

20110006.wpd

ORDERS GRANTING REQUEST FOR JUDICIAL NOTICE OF PLEADING FILED
BY THE PETITIONER IN THE COURT OF APPEAL STATA
OF CALIFORNIA , FIRST APPELLATE DISTRICT



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

**FILED**

OCT - 2 2007

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
                    DEPUTY

In re DARRYL LEE GOLDSTEIN,

on Habeas Corpus.

A118925

(Marin County
Super. Ct. No. SC151759A)

BY THE COURT:

The request for judicial notice is granted.

Dated: _____OCT - 2 2007_____          _____KLINE, P.J._____ P.J.

A118925

Darryl Lee Goldstein
CDC:P-79097
CSP San Quentin
1 North 001 Lower
San Quentin, CA 94964

## NOTICE

*Please include both the appellate case number and the division number on any written communication or filing submitted to this court.*

**Our website address is**
**http://appellatecases.courtinfo.ca.gov**

pet

adda

**ORDER DENUING HABEAS CORPUS PETITION AND INSTRUCTING
PETITIONER TO FILE HABEAS CORPUS TO JUDGE HENDERSON**



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

**FILED**

OCT - 2 2007

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
                    DEPUTY

In re DARRYL LEE GOLDSTEIN,

on Habeas Corpus.

A118925

(Marin County
Super. Ct. No. SC151759A)

BY THE COURT:

Petitioner, an inmate at San Quentin State Prison representing himself in propria persona, has filed this, his second, petition for writ of habeas corpus in a continuing attempt to obtain relief from the failure of custodial authorities to provide a therapeutic shoe required by his medical condition. Petitioner alleges he has a diabetes-related foot problem and is threatened with loss of his right foot if not provided a special shoe designed for him by a specialist at the request of his physician.

By way of background, on August 1, 2007, we issued an order to show cause returnable to the Marin County Superior Court directing it to take evidence and make a determination as to whether petitioner has been provided adequate footwear that is compatible with his medical condition, and if not, to order that such be provided. On August 14, 2007, the superior court appointed the Prison Law Office as counsel for petitioner and set a hearing for October 26, 2007.

On August 21, 2007, the Attorney General on behalf of the California Department of Corrections and Rehabilitation (CDCR) filed a request in the superior court to vacate the order to show cause on the ground that petitioner's medical care is controlled by a federally appointed receiver and not by CDCR. On August 22, 2007, the superior court vacated the order to show cause and denied the petition for writ of habeas corpus. Its order states: "Because the California Department of Corrections and Rehabilitation's

1

Division of Health Care Services is under the management and control of a federal court-appointed receiver,[] this court has no jurisdiction to address the claims asserted [in]the May 9, 2007 petition for writ of habeas corpus filed by petitioner in the above referenced appellate court, case number A117652." The order further states: "Petitioner may present his concerns to the California Prison Health Care Receivership Corp., Office of the Receiver, 1731 Technology Drive, Suite 700, San Jose, CA 95110. Kristina Hector is the Inmate Patient Relations Manager for the Office of the Receiver." However, two form letters petitioner had previously received from Ms. Hector informed him the Office of the Receiver was "unable" to respond to the many letters like his it received from inmates complaining of inadequate medical attention and advised him 'to contact counsel for the inmate class in *Plata v. Schwarzenegger*, the Prison Law Office."

On August 30, 2007, petitioner filed a new petition for writ of habeas corpus and/or writ of mandate in this court setting forth the history of his prior petition and his continuing need for relief. On August 31, 2007, the Prison Law Office filed a letter in connection with this habeas petition, which we ordered filed as a letter amicus brief. The letter was submitted as previously-appointed counsel for petitioner in the superior court and as class counsel in *Plata v. Schwarzenegger,* No. C01-1351 TEH. It states, inter alia:

"The Prison Law Office originally filed the *Plata* case in 2001, alleging that defendants were providing constitutionally inadequate care in all of its state prisons under the cruel and unusual clause of the Eighth Amendment. In 2002, defendants conceded that the care was inadequate and stipulated to an injunction that required them to implement comprehensive new medical policies and procedures at all institutions."

"The state officials who were defendants in the *Plata* case agreed that individual lawsuits would *not* be precluded because of the class action. The injunction states [at paragraph 29]: 'Neither the fact of this stipulation nor any statements contained herein may be used in any other case or administrative proceeding, except defendants, CDC, or employees thereof reserve the right to use this Stipulation and the language herein to assert issue preclusion or res judicata in other litigation seeking class or systemic relief.' "

According to the Prison Law Office, paragraph 29 of the stipulated injunction was included because the focus of the *Plata* class action was on fixing the medical care *system* in CDCR. Given the approximate 170,000 class action members, it was not practicable, according to the Prison Law Office, for the class action to address their individual immediate needs, and that is why the avenues of state habeas corpus as well as civil rights actions were specifically left available to individual prisoners.

At our invitation, the Attorney General filed an informal response to the Prison Law Office's letter amicus brief and petitioner's new habeas petition. The Attorney General does not dispute the Prison Law Office's claim that the stipulated injunction in *Plata* allows individual actions in state courts. The Attorney General points out, however, that because control over the medical delivery component of CDCR has been taken from CDCR and given to the Receiver, the allowance by the injunction of such individual lawsuits by members of the plaintiff class in *Plata* is illusory, at least insofar as it purports to allow inmates to file state habeas corpus petitions alleging inadequate medical care. The Attorney General is correct.

The order of United States District Court Judge Thelton E. Henderson appointing the Receiver provides in pertinent part: "[T]he Receiver shall have the duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." *(Plata v. Schwarzenegger,* No. C01-1351, Order Appointing Receiver (Feb. 14, 2006) at p. 2.) The order further states: "The Receiver shall exercise all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison medical health care system. The Secretary's exercise of the above powers is suspended for the duration of the Receivership . . . ." *(Id.* at p. 4) The Receiver's appointment became effective April 17, 2006.

The Receiver's fourth bi-monthly report, submitted in March 2007, described at some length why he "took steps to assume direct management over all aspects of *Plata* related services, removing Peter Farber-Szekrenyi from all responsibility concerning

CDCR medical care and announcing the formation of the *Plata* Support Division, a new unit of the CDCR dedicated to prisoner/patient medical care delivery support." The Receiver's reasons for this action were his convictions that: "1. Office of the Receiver staff, now that the assembly of his remedial term nears completion, are more capable of directing daily CDCR medical operations than State officials. [¶] 2. The periodic crises encountered by medical clinicians require timely and adequate responses which are best managed by the Officer of the Receiver. [¶] 3. The remedial processes will be more effective if long term project implementation merges as closely as possible with daily operations. [¶] 4. Providing directions for State employees concerning the daily operation of medical delivery in California's prisons will help ensure the eventual return of the prison medical delivery system to the State." (*Plata v. Schwarzenegger, supra*, Receiver's Fourth Bi-Monthly Report (March 19, 2007) at pp. 50-51.)

In May 2007, the Receiver moved for an order modifying portions of the stipulated injunction. Notably, however, paragraph 29 was *not* included among the provisions that assertedly needed modification and it was not modified. On September 6, 2007, Judge Henderson issued an order granting a number of the requested modifications. In the course of this order, Judge Henderson discussed the procedure for review by the Receiver and medical follow up of complaints his office was receiving from inmates of inadequate medical care. The Court acknowledged that there had been a "few cases in which the Receiver has intervened in an individual matter and determined that there is a serious medical issue," but declared "that responding to individual letters by the Receiver is not part of the systemic remedy that the Receiver has been charged with developing and implementing, *thus monitoring of these actions is not essential.*" (*Plata v. Schwarzenegger, supra*, Order Re Receiver's May 2007 Preliminary Plan of Action, and Motion for Order Modifying Stipulated Judgment (Sept. 6, 2007) at pp. 14-15, italics added.)

The form letters petitioner has received from the Receiver's Office demonstrate that, as in the case of petitioner, the Receiver is now largely refusing to investigate individual inmate claims of inadequate medical treatment. The Receiver's unwillingness

to inquire into inmate complaints of inadequate medical care raises the question why he cannot direct the appropriate state employees he supervises to do so. As we have noted, the Receiver has justified his assumption of direct management over all aspects of *Plata* related services on the grounds he is not only "more capable of directing daily CDCR medical operations than State officials," but also because "[p]roviding directions for State employees concerning the daily operations of medical delivery in California's prisons will help ensure the eventual return of the prison medical delivery system to the State."

In short, in *Catch-22* fashion, the federal receivership designed to *protect* inmates' right to adequate medical care operates not just to divest state correctional authorities of control over the provision of such care, and deprive state courts of the authority to insure delivery of medical care to inmates in need, but also, and perhaps most unconscionably, to allow the Receiver to relieve himself of any duty to address the medical problems of an individual inmate no matter how grave and even life-threatening they may be. We do not believe this unacceptable state of affairs could have been intended by the Federal District Court.

Before the federal Receiver assumed control of the state prison medical system, state courts had the power to grant relief to prison inmates denied essential medical care through writs of habeas corpus. Petitions for writ of habeas corpus "must be directed to the person having custody of or restraining the person on whose behalf the application is made. . . ." (Pen. Code, § 1477.) However, because the Receiver, who has custody of state prison inmates for purposes of the delivery to them of medical care, is not amenable to state judicial process, we could not grant the petition before us even if we determined it has merit. The situation created by the rulings of the Federal District Court create a jurisdictional problem for aggrieved inmates that state courts are powerless to solve.

We are confident that if the effect of Judge Henderson's rulings and the conduct of the Receiver are brought to his attention through the filing in his court of a petition for writ of habeas corpus, he is likely to rectify the problem. We therefore commend that course of action to petitioner.

The petition for writ of corpus before us is denied on the ground that the only party that can provide the relief petitioner seeks, the federal Receiver, is neither a party to this proceeding nor subject to state judicial authority.

The Clerk is directed to serve copies of this Order also on United States District Court Judge Thelton E. Henderson, Federal Receiver Robert Sillen, and the Prison Law Office.

Date:    OCT - 2 2007

KLINE, P.J.

_____ P.J.
J. Anthony Kline

VERIFICATION OF PETITIONERS
CONTINUED EFFORTS TO OBTAIN RELIEF FROM FEDERAL RECEIVER

**CALIFORNIA
PRISON HEALTH CARE
RECEIVERSHIP CORP.**

Robert Sillen
Receiver

November 6, 2007

Darryl Goldstein, P-79097
California State Prison, San Quentin
San Quentin, CA 94964

Dear Mr. Goldstein:

The California Prison Health Care Receivership has received your letter. We appreciate your correspondence. Our office carefully reviews each communication we receive regarding inmate patient health care. All information provided to us is considered in implementing systemic reform.

Due to the high volume of letters we receive, we are unable to immediately respond to all individual cases. If you have not already done so, we recommend that you utilize the 602 appeals process at your institution. You may also wish to contact counsel for the inmate class in *Plata v. Schwarzenegger*, the Prison Law Office. For your records, the address to the Prison Law Office is:

Prison Law Office
General Delivery
San Quentin, CA 94549

The Receiver is committed to creating a system where custody and health care staff together guarantee that access to care and quality of medical services in California prisons meet constitutional standards. An integral part of meeting that goal is hearing from the patients about the treatment they are receiving.

We will achieve improvements in the quality of medical care. However, it is a large and complex problem for which there are no quick fixes, but I assure you that the work has already begun. Thank you for your interest in the remedial process.

Sincerely,

*Margie Shea*

for  Kristina Hector
Inmate Patient Relations Manager

RE PUBLICATION REQUEST FOR In re Darryl Lee Goldstein
A-118925



STATE OF CALIFORNIA
### Court of Appeal
FIRST APPELLATE DISTRICT
DIVISION TWO
350 McALLISTER STREET
SAN FRANCISCO, CA 94102-4712



J. ANTHONY KLINE
PRESIDING JUSTICE

TELEPHONE
(415) 865-7370
anthony.kline@jud.ca.gov

October 19, 2007

California Supreme Court
350 McAllister Street
San Francisco, CA 94102

RE: Publication request for *In re Darryl Goldstein*, A118925

Dear Justices:

Pursuant to rule 8.1120(b), we are forwarding a publication request from the Attorney General regarding the order we filed on October 2, 2007, along with a copy of the order in *In re Darryl Goldstein*, A118925, because we no longer have jurisdiction over the matter. Rule 8.1100 et seq. of the California Rules of Court pertaining to publication of appellate opinions refers only to publication of opinions and not orders. Accordingly, we recommend against publication of the order.

Sincerely,

KLINE, P.J.

J. Anthony Kline, Presiding Justice
Division Two, First Appellate District

Copies to all parties

# DECLARATION OF SERVICE BY MAIL

I, __JOHN OSCAR PHILLIPS__, the undersigned, declare:

Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

CDC No. __V-88750__     Housing __4-H-66 L__

San Quentin State Prison

San Quentin, CA 94974

On __Nov 14, 2007__, _____, I served the following document(s):

Month/Day     Year

__PETITION FOR WRIT OF HABEAS CORPUS / SUPPORTING DOCUMENTS__

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

__CLERK OF THE COURT__

__UNITED STATES DISTRICT__

__NORTHERN DISTRICT OF CALIOFORNIA__

__450 Goldsn Gate Ave__

__San Francisoc, Ca__

__949102__

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this __14__ day of __November__, __2007__ San Quentin, CA, County of Marin.

_____

Signature of declarant