**United States District Court**
For the Northern District of California

1

2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DARRYL L. GOLDSTEIN,                    No. C 07-05958 SBA (PR)

Plaintiff,                              **ORDER GRANTING PLAINTIFF AN EXTENSION OF TIME TO FILE OPPOSITIONS TO DEFENDANTS SILLEN'S AND RUSSELL'S AS WELL AS DEFENDANTS DAVID'S AND WILSON'S MOTIONS FOR SUMMARY JUDGMENT; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS**

v.

ROBERT SILLEN, ET AL.,

Defendants.
_____/

Plaintiff, a <u>pro se</u> state prisoner incarcerated at San Quentin State Prison (SQSP), has inundated the Court with miscellaneous motions and filings since his complaint was ordered served on March 8, 2010. Among other things, he had filed the following motions: (1) "Motion to Strike the Declaration of Dr. Elena Tootall [sic] in Support of Motion for Summary Judgment or, in the Alternative, Summary Adjudication" (docket no. 129); (2) "Motion Requesting the Courts [sic] Consideration to Plaintiff's Confinement" (docket no. 147); (3) "Motion for Administrative Relief: Request for Clarification Concerning Discover[y] Request Propound[ed] on Defendant Tilton" (docket no. 149); (4) "Motion for Administrative Relief re Medical Records from Defendants Wilson and David" (docket no. 159); (5) "Request for Appointment of Medical Expert" and "Request to File Supplemental Declaration in Support of Request for Appointment of Medical Expert" (docket nos. 170, 194); (6) "Request for U.S. Marshal Service on Defendants Tilton, Ayers, Welch, Pretrikas, Saylor, Kannon, Tootell and Griffith" (docket no. 188); (7) "Request for Court Order to Compel Personal Attendance of Defendants at Settlement Conference" (docket no. 199); and (8) "Request for Court Ordered Medical and Mental Health Examination" (docket no. 211). Plaintiff has not filed his oppositions to Defendants Sillen's and Russell's as well as Defendants David's and Wilson's motions for summary judgment. These oppositions are currently overdue.

**I.    Motion for Extension of Time to File Oppositions and Motion for Medical and Mental Health Exams**

In a letter dated January 5, 2011, Plaintiff explained that his opposition to Defendants Sillen's and Russell's motion for summary judgment "was destroyed by a Correctional Officer" (docket no.

United States District Court
For the Northern District of California

206).  On January 25, 2011, Plaintiff filed a document entitled, "Request for Court Ordered Medical and Mental Health Examination."  In that request, Plaintiff states that "health conditions, uncooperative defendants, [and] retaliatory actions by San Quentin correctional staff" have prevented him from filing timely oppositions to Defendants Sillen's and Russell's as well as Defendants David's and Wilson's motions for summary judgment.  Therefore, the Court construes these documents as a request for an extension of time to file his oppositions.

Plaintiff's request for an extension of time to file his oppositions is GRANTED.  The parties shall abide by the briefing schedules outlined below.

In his January 25, 2011 filing, Plaintiff also requests medical and mental health examinations because he is "proceeding pro se under rather questionable conditions of confinement which have taken a toll on Plaintiff's medical and mental health."  (Jan. 25, 2011 Req. at 4.)  The Court DENIES Plaintiff's request for medical and mental health examinations (docket no. 211).  If Plaintiff requires any medical and mental health examinations, then he must request prison officials to provide him with such.  If prison officials' failure to do so causes Plaintiff any harm, then he may file a separate civil rights action alleging any constitutional violations from their actions.

**II.    Plaintiff's Remaining Pending Motions**

The Court now turns to Plaintiff's remaining pending motions.

**A.    Motion to Strike the Declaration of Elena Tootell**

On August 9, 2010, Defendants Sillen and Russell filed a motion for summary judgment (docket no. 91) and a declaration of Dr. Elena Tootell[1] in support of their motion for summary judgment (docket no. 94).  On September 7, 2010, Plaintiff filed a motion to strike the declaration of Defendant Tootell (docket no. 129).  Defendant Tootell's declaration states:

> On October 31, 2006, Plaintiff met with and was examined by Dr. Karen Saylor, San Quentin's CMO at the time.  Plaintiff and Dr. Saylor discussed Plaintiff's foot problems.  In addition to explaining to Plaintiff that he would be referred to Dr. Griffith, Dr. Saylor also explained to Plaintiff that she could not provide him with a chrono for soft shoes, because all shoes issued to San Quentin inmates were soft.

---

[1] During the settlement conference before Magistrate Judge Nandor Vadas on December 29, 2010, the parties agreed to dismiss all claims against Defendant Tootell with prejudice.  (Minute Entry of Dec. 29, 2010 Settlement Conf. at 1.)

**United States District Court**
For the Northern District of California

(Tootell Decl. ¶ 7.)  Plaintiff alleges the declaration is untrue because "Saylor never examined - came into personal contact with or spoke with the plaintiff."  (Mot. to Strike at 3.)  Plaintiff requests this Court strike the declaration in its entirety or in the alternative have an evidentiary hearing.  (Id. at 5.)  Based on Plaintiff's allegations, the Court would have to find that Defendants Saylor and Tootell are being untruthful about the medical treatment provided to Plaintiff.  In order to strike the declaration, the Court would then have to accept Plaintiff's version of events while rejecting Defendants Saylor's and Tootell's.  However, the Court cannot make credibility determinations in connection with a summary judgment motion.  Therefore, the Court DENIES Plaintiff's motion to strike (docket no. 129).

Plaintiff's motion to strike Defendant Tootell's declaration could be construed as part of his oppositions to Defendants Sillen's and Russell's as well as Defendants David's and Wilson's motions for summary judgment.  However, because Plaintiff did not entitle his motion as such, the Court nonetheless directs Plaintiff to file his oppositions with supporting declarations made under penalty of perjury.

**B.**    **Motion Relating to Plaintiff's Confinement**

On September 30, 2010, Plaintiff filed a motion requesting the Court's consideration of his confinement (docket no. 147).  Plaintiff is confined to the Reception Unit at SQSP.  (Mot. Req. Consideration of Confinement at 1.)  Plaintiff alleges SQSP "has been on a modified program since September 16, 2010 after - shoots [sic] being fired on the West Block Reception Yard," which results in "prisoners [being] locked down 23 1/2 hours per day."  (Id. at 1-3.)  Plaintiff alleges "Defendants . . . concluded to keep Plaintiff confined in the Reception Unit where plaintiff's ability to prosecute this case is severely limited opposed to mainline housing."  (Id. at 4)  Plaintiff also filed a declaration in support of this motion in which he further alleges "that my efforts to prosecute this case have been further hindered by the significant number of lock downs and modified programming" at SQSP.  (Decl. in Supp. of Mot. Req. Consideration of Confinement ¶ 9.)  Plaintiff further alleges the law library was closed on September 15, 2010, because shots were fired, and again on September 20, 2010, because of staff furlough days.  (Id. ¶ 10-11.)  As a result, Plaintiff states "I was unable to complete motions for appointment of medical expert any [sic] stay of

summary judgment." (Id. ¶ 12.)  Plaintiff "requests that this Court take this information under serious consideration." (Mot. Req. Consideration of Confinement at 4.)  The Court construes this motion as a request to be transferred from the SQSP Reception Unit so that he may access the law library.

In Bounds v. Smith, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977).  Subsequently, the Supreme Court clarified that Bounds did not establish a substantive right to law library access, but rather signaled that in order for prisoners' right of access to the courts to be meaningful, they must be given adequate resources to prepare. See Lewis v. Casey, 518 U.S. 343, 350-51 (1996).  The Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Id. at 351.

In the instant case, Plaintiff has not alleged any actual harm caused by his alleged lack of access to SQSP law library.  In fact, a review of Plaintiff's prolific filings in this case, and the numerous civil actions he has filed in the past, demonstrates that he possesses a higher level of legal sophistication than most pro se plaintiffs and has had adequate resources and materials to pursue his various claims.  Due to the extensive and thorough nature of Plaintiff's past and current filings,[2] it is

---

[2]  Plaintiff alleges SQSP has been on "lock down" since July 14, 2010 and therefore he cannot prosecute this case by filing and responding to motions.  However, since July 14, 2010 until the filing of his request to be transferred from the SQSP Reception Unit, Plaintiff has filed seven

United States District Court
For the Northern District of California

1    clear that his claims have not been hindered by a lack of access to the law library.

2        For the foregoing reasons, the Court finds that Plaintiff is and has been allowed sufficient

3    access to the law library, and that he has suffered no harm from a lack thereof.  Accordingly,

4    Plaintiff's "Motion Requesting the Court's Consideration to Plaintiff's Confinement" (docket no. 147)

5    is DENIED.

6        **C.    Discovery Requests**

7        On September 30, 2010, Plaintiff has filed several discovery motions, which the Court will

8    construe as motions to compel discovery.  In his "Motion for Administrative Relief: Request for

9    Clarification Concerning Discover[y] Request Propound[ed] on Defendant Tilton" (docket no. 149),

10   he seeks an Order from the Court directing Defendants David, Wilson, and Tilton "to inform the

11   court at once if they plan to responde [sic] to the Discovery Requests Propounded by Plaintiff on

12   Sept. 15, 2010, Sept. 19, 2010, Sept. 9, 2010."  In his "Motion for Administrative Relief re Medical

13   Records From Defendant Wilson and David" (docket no. 159), he seeks the following: (1) "complete

14   medical records, including any and all medical records received by San Quentin State Prison

15   officials from any other hospital, jail, prison, and any and all medical related appeals from January 1,

16   2003, to present . . . ." and (2) "complete copy of his Inmate central File for the number P-79097 for

17   the years January 1, 2003 to the present."  Plaintiff also requests that the materials be produced in

18   chronological order and enlarged by twenty-five percent.

19       On October 25, 2010, Defendants filed an opposition to Plaintiff's motions to compel (docket

20   no. 165).  Among other reasons for their opposition, Defendants allege: (1) Plaintiff has not satisfied

21   the meet and confer requirement; (2) Plaintiff was previously sent his medical records on July 26,

22   2010; (3) Plaintiff "has not adduced any medical need for enlarged records;" (4) the "pertinent

23   medical records are already attached to, and summarized in, the Tootell Decl.;" and (5) Plaintiff's

24   Central File is irrelevant and should not be produced for security reasons.  (Opp'n to Mot. to Comp.

25

26   _____

27   motions accompanied with seven declarations in support of those motions.  In addition, Plaintiff has
     filed nine letters to the Court and one  reply.  Furthermore, since requesting the transfer, Plaintiff has
     filed the following: an additional seven motions accompanied with ten declaration in support of

28   those motions; eight letters to the Court; and one reply.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

at 1-4.)  On November 4, 2010, Plaintiff replied to Defendants' opposition by addressing a letter to the Court (docket no. 172), stating that he has already met and conferred with defense counsel.[3]

Even if Plaintiff has satisfied the meet and confer requirements, the Court finds that Plaintiff has already been furnished with the relevant medical records; therefore, those requests are DENIED as moot.  All other discovery requests are DENIED as irrelevant because his complete file is not necessary to oppose summary judgment.  Therefore, all discovery requests (docket nos. 149, 159) are DENIED.

### D.    Request for Appointment of Medical Expert

Plaintiff seeks the appointment of a medical expert (docket nos. 170, 194).[4]  "Having a medical expert review those records would allow the Court to see the dire condition Plaintiff's foot was in at the time of his parole Feb. 2008."  (Mot. for Appointment of Medical Expert at 8.)  Specifically, Plaintiff alleges "Defendants have kept from the court the crucial report by Dr. Lisa Pratt and medical records from institutions and hospitals where plaintiff was provided foot-care treatment."  (Id. at 14.)  Plaintiff is not entitled to a medical expert at this stage of the case.  If Plaintiff survives summary judgment, he may renew his medical expert request.  Accordingly, his motion for appointment of a medical expert (docket nos. 170, 194) is DENIED as premature.

### E.    Motions Denied as Moot

Because the settlement hearing already took place on December 29, 2010, Plaintiff's "Request for Court Order to Compel Personal Attendance of Defendants at Settlement Conference" (docket no. 199) is DENIED as MOOT.  Similarly, because the Court has already ordered the U.S. Marshal to serve Defendants Tilton, Ayers, Welch, Pretrikas, Saylor, Kannon, Tootell and Griffith, Plaintiff's motion for the U.S. Marshal to Serve these Defendants (docket no. 188) is DENIED as MOOT.

---

[3]  Plaintiff has attached a copy of a letter dated October 20, 2010 addressed to Defendants' counsel in which the Plaintiff sought to satisfy the meet and confer requirements.  (Pl. Reply at Ex. 3.)

[4]  Plaintiff has filed a document entitled, "Request to File Supplemental Declaration In Support of Request for Appointment of Medical Expert" (docket no. 194).  The Court construes this motion as a supplement to his motion for appointment of a medical expert.

United States District Court
For the Northern District of California

**CONCLUSION**

For the reasons outlined above,

1.     Plaintiff's request for an extension of time to file his oppositions to Defendants Sillen's and Russell's as well as Defendants David's and Wilson's motions for summary judgment (docket no. 206) is GRANTED.  The time in which Plaintiff may file his oppositions will be extended up to and including **February 14, 2011**.  If Defendants Sillen and Russell as well as Defendants David and Wilson wish to file reply briefs, they shall do so no later than **March 15, 2011**.

The Court notes that the parties should also abide by the Court's previously set briefing schedules -- in its March 8, 2010, August 25, 2010 and September 9, 2010 Orders -- as to the following Defendants' dispositive motions: Kannon, Griffith, Welch, Kelso, Ayers, Petrikas, Saylor, and Kannon.[5]  Similarly, the parties should abide by the briefing schedules for any oppositions and replies as well.

**No further extensions of time will be granted in this case absent exigent circumstances.**

2.     Plaintiff's "Request for Court Ordered Medical and Mental Health Examination" (docket no. 211) is DENIED.

3.     Plaintiff's "Motion to Strike the Declaration of Dr. Elena Tootall [sic] in Support of Motion for Summary Judgment or, in the Alternative, Summary Adjudication" (docket no. 129) is DENIED.

4.     Plaintiff's "Motion Requesting the Courts [sic] Consideration to Plaintiff's Confinement" (docket no. 147) is DENIED.

5.     Plaintiff's "Motion for Administrative Relief: Request for Clarification Concerning Discover[y] Request Propound[ed] on Defendant Tilton" (docket no. 149) and "Motion for Administrative Relief re Medical Records From Defendant Wilson and David" (docket no. 159) are DENIED.

---

[5] To date, Defendants Kannon, Griffith and Welch have not filed an answer.  However, Defendant Griffith's attorney has informed the Court that he will soon be filing an answer on behalf of Defendant Griffith.

1      6.      Plaintiff's "Request for Appointment of Medical Expert" and "Request to File

2   Supplemental Declaration in Support of Request for Appointment of Medical Expert" (docket nos.

3   170, 194), which have been construed as a request for a medical expert, are DENIED.

4      7.      Plaintiff's "Request for Court Order to Compel Personal Attendance of Defendants at

5   Settlement Conference" (docket no. 199) is DENIED as MOOT.

6      8.      Plaintiff's "Request for U.S. Marshal Service on Defendants Tilton, Ayers, Welch,

7   Pretrikas, Saylor, Kannon, Tootell and Griffith" (docket no. 188) is DENIED as MOOT.

8      9.      This Order terminates Docket nos. 129, 147, 149, 159, 170, 188, 194, 199 and 211.

9      IT IS SO ORDERED.

10  DATED: 2/2/11                                _____
                                                 SAUNDRA BROWN ARMSTRONG
11                                               United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3    UNITED STATES DISTRICT COURT
     FOR THE
     NORTHERN DISTRICT OF CALIFORNIA
4

5    DARRYL L. GOLDSTEIN,
                                                    Case Number: CV07-05958 SBA
6                    Plaintiff,
                                                    **CERTIFICATE OF SERVICE**
7        v.

8    ROBERT SILLEN, ET AL. et al,

9                    Defendant.
                                              /
10

11   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
     Court, Northern District of California.
12
     That on February 3, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
13   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
     envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
14   located in the Clerk's office.

15

16   Darryl Lee Goldstein P-79097
     California State Prison - San Quentin
17   San Quentin, CA 94964

18

19   Dated: February 3, 2011
                                                    Richard W. Wieking, Clerk
20                                                  By: LISA R CLARK, Deputy Clerk

21

22

23

24

25

26

27

28

G:\PRO-SE\SBA\CR.07\Goldstein5958.EOT-oppo2MSJ&pendMOTS.wpd