1       IN THE UNITED STATES DISTRICT COURT

2      FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 3 | DARRYL LEE GOLDSTEIN, ) | No. CV 07-5958 SBA (PR) |
| | ) | |
| 4 | Plaintiff, ) | **ORDER GRANTING DEFENDANTS RUSSELL** |
| | ) | **AND SILLEN'S MOTION FOR SUMMARY** |
| 5 | ) | **JUDGMENT; ADDRESSING PLAINTIFF'S** |
| | v. ) | **PENDING MOTIONS; GRANTING** |
| 6 | ) | **DEFENDANTS' MOTIONS TO COMPEL** |
| | ) | **PLAINTIFF'S DEPOSITION AND TO EXTEND** |
| 7 | ) | **DISPOSITIVE MOTION FILING DEADLINE;** |
| | ROBERT SILLEN, et al., ) | **REFERRING CASE FOR FURTHER** |
| 8 | ) | **SETTLEMENT PROCEEDINGS; AND** |
| | Defendants. ) | **SETTING NEW BRIEFING SCHEDULE** |
| 9 | ) | |
| | ) | (Docket nos. 91, 231, 232, 235, 237, 238, 240, 242, |
| 10 | _____ ) | 243, 244, 245, 246, 249) |

<div style="text-align: left; font-weight: bold; writing-mode: vertical">United States District Court<br>For the Northern District of California</div>

11         **INTRODUCTION**

12   Plaintiff, a state prisoner currently incarcerated at California State Prison, Solano (Solano),

13 filed a <u>pro se</u> civil rights complaint, pursuant to 42 U.S.C. § 1983, against thirteen Defendants

14 alleging constitutional rights violations relating to the lack of treatment for his foot problems while

15 he was incarcerated at San Quentin State Prison (SQSP).  There are ten pending motions filed by

16 Plaintiff.  Three motions for summary judgment and one joinder have also been filed by Defendants.

17 In addition, Defendants have filed Motions to Compel Plaintiff's Deposition and to Extend

18 Dispositive Motion Filing Deadline.  In this Order, the Court will only consider Defendants Russell

19 and Sillen's motion for summary judgment (docket no. 91), Defendant Griffith's motion for summary

20 judgment by way of joinder (docket no. 235) and Defendants' Motions to Compel Plaintiff's

21 Deposition and to Extend Dispositive Motion Filing Deadline (docket no. 249).

22   For the reasons discussed below, the Court hereby GRANTS Defendants Russell and Sillen's

23 motion for summary judgment, and DENIES Defendant Griffith's motion for summary judgment by

24 way of joinder.  The Court addresses Plaintiff's pending motions and GRANTS the remaining

25 Defendants' Motions to Compel Plaintiff's Deposition and to Extend Dispositive Motion Filing

26 Deadline.  The Court will also refer this action for further settlement proceedings before Magistrate

27 Judge Nandor Vadas, as directed below.  Finally, the parties are directed to abide by the new

28 briefing schedule outlined below relating to the two remaining motions for summary judgment and

United States District Court
For the Northern District of California

to any other dispositive motions that are due.

## PROCEDURAL BACKGROUND

On November 27, 2007, Plaintiff filed a "Petition for Writ of Habeas Corpus" (docket no. 1). On June 19, 2008, the Court found that the petition "goes entirely to the conditions of his confinement," and directed Plaintiff to instead file a § 1983 civil rights complaint. (June 19, 2008 Order at 1-2.)

On July 11, 2008, Plaintiff filed a § 1983 complaint against the following Defendants: Federal Receivers Robert Sillen and J. Clark Kelso; Sillen's SQSP Manager Jayne Russell; former SQSP Warden Robert Ayers; SQSP Associate Warden Shelia Petrikas; SQSP Chief Medical Officers Elaine Tootell,[1] Saylor and Kannon; SQSP Physicians Griffith,[2] David and Wilson; Secretary of the California Department of Corrections and Rehabilitation (CDCR) James E. Tilton; and Doe Defendant as the deputy secretary of the CDCR (docket no. 9).

On March 8, 2010, the Court found cognizable Plaintiff's claims that Defendants Griffith, David and Wilson were deliberately indifferent in their treatment of Plaintiff's foot issues. (Mar. 8, 2010 Order at 3.) The Court also found cognizable Plaintiff's supervisory liability claims against Defendants Sillen, Russell and Tilton. The Court dismissed Plaintiff's supervisory liability claims against Defendants Kelso, Ayers, Petrikas, Saylor, Kannon and Tootell with leave to amend. (Id. at 4.) Finally, the Court exercised supplemental jurisdiction over state law negligence claims. (Id. at 5.)

On May 3, 2010, Plaintiff filed an amendment to the complaint (docket no. 49). The Court then found cognizable Plaintiff's supervisory liability claims against Defendants Kelso, Ayers, Petrikas, Saylor, Kannon and Tootell. (Aug. 25, 2010 Order at 7.) On May 11, 2010, Defendants Russell and Sillen filed an answer to the complaint (docket no. 62).

On August 9, 2010, Defendants Russell and Sillen filed a motion for summary judgment (docket no. 91). Plaintiff's opposition to their motion was due by no later than October 8, 2010,

---

[1] In the complaint, Plaintiff misspells Defendant Tootell's name as "Pootell."

[2] In the complaint, Plaintiff misspells Defendant Griffith's name as "Griffin."

2

United States District Court
For the Northern District of California

1    which is "sixty (60) days after the date on which Defendants' motion is filed." (Mar. 8. 2010 Order

2    at 7.) On September 7, 2010, Plaintiff filed a document entitled, "Motion to Strike the Declaration

3    of Dr. Elena Tootle" (docket no. 129), which the Court construed as a document in support of his

4    opposition to the motion for summary judgment. However, the Court nonetheless permitted Plaintiff

5    to file "a more complete opposition no later than October 8, 2010." (Sept. 23, 2010 Order at 1.)

6    While the Court has granted several extensions of time, Plaintiff has still not filed his opposition to

7    Defendants Russell and Sillen's motion for summary judgment. Instead, he has filed yet another

8    extension of time request, which is addressed below.

9         In an Order dated September 10, 2010, the Court granted Plaintiff's request for an extension

10   of the time-frame in which to engage in discovery with Defendants Wilson, Tilton, Sillen and

11   Russell up to and including September 15, 2010 (docket no. 134).

12        On November 23, 2010, Defendants David and Wilson filed a motion for summary judgment

13   (docket no. 185).[3] Plaintiff's opposition to Defendants David and Wilson's motion for summary

14   judgment was due no later than December 23, 2010, thirty days after the motion was filed. (Sept.

15   23, 2010 Order at 1-2.) Even though the Court has granted Plaintiff two extensions of time to file

16   his opposition, to date Plaintiff has not filed an opposition. Plaintiff has filed another extension of

17   time request, which the Court will also address below.

18        On December 29, 2010, Defendants Ayers, Petrikas, Saylor, Tilton and Tootell filed a waiver

19   of their answer.

20        Also on December 29, 2010, the parties appeared before Magistrate Judge Vadas for a

21   settlement hearing. Plaintiff and Defendant Tootell reached a settlement (docket no. 204). Plaintiff

22   and the remaining Defendants were unable to reach a settlement.

23        On January 24, 2011, Defendant Kelso filed a motion for summary judgment (docket no.

24   208). Plaintiff's opposition is due on March 25, 2011, sixty days after the motion was filed. (March

25   8, 2010 Order at 7.) To date, Plaintiff has not yet filed an opposition to Defendant Kelso's motion.

26

27

28        [3] On September 10, 2010, Defendants David and Wilson filed a motion for extension of time
     to file dispositive motions (docket no. 135). On September 23, 2010, the Court granted an extension
     of time up to and including November 23, 2010 (docket no. 144).

United States District Court
For the Northern District of California

1   Instead, Plaintiff has filed an extension of time (EOT) request, which the Court will address below.

2       On February 15, 2011, Defendant Griffith filed his answer to the complaint (docket no. 227).

3   On March 2, 2011, Defendant Griffith filed a joinder to Defendants Russell and Sillen's motion, as

4   well as Defendants David and Wilson's motions for summary judgment (docket no. 235).

5       On March 11, 2011, Plaintiff filed a "request that this case once again be sent back to . . .

6   [Magistrate] Judge Vadas for settlement conference" (docket no. 244).

7       On March 14, 2011, Plaintiff filed a "Request for the Court to Consider the Below Listed

8   Documents as Partial Opposition to Defendant[] Don Griffith['] Joinder to the Summary Judgment

9   Motions of Defendants Sillen and Russell and Wilson and David" (docket no. 245) and a "Motion

10  for Clarification on Deadline for Plaintiff to File Opposition to the Joinder of Defendant Griffith"

11  (docket no. 246).

12      On March 17, 2011, Defendant Welch filed a waiver of his answer.

13      On March 18, 2011, Defendants filed their Motions to Compel Plaintiff's Deposition and to

14  Extend Dispositive Motion Filing Deadline (docket no. 249).

15  **PLAINTIFF'S PENDING MOTIONS**

16  **I.    EOT for Oppositions to Defendants Russell and Sillen's as well as Defendants David
        and Wilson's Motions for Summary Judgment (docket no. 232)**

17
18      As mentioned above, Plaintiff's original deadline to oppose Defendants Russell and Sillen's

19  motion for summary judgment was October 8, 2010, and Plaintiff's original deadline to oppose

20  Defendants David and Wilson's motion for summary judgment was December 23, 2010.

21      **A.    Opposition to Defendants Russell and Sillen's Motion**

22      On October 7, 2010, one day before the deadline to file his opposition to Defendants Russell

23  and Sillen's motion for summary judgment, Plaintiff filed a "Request to Stay and or Extend the Time

24  to File Opposition to Summary Judgment (Sillen-Russell), [pursuant to] Rule Civil Proc. Rule

25  56(f)[4]" (docket no. 156).  Plaintiff requested an additional sixty days because his "health,

26  institutional lock downs, modified programming, unavailable correctional staff for escort to the law

27  _____

28      [4]  Former Federal Rule of Civil Procedure 56(f) was amended in December, 2010.  It is now
    set forth in Rule 56(d).  "Subdivision (d) carries forward without substantial change the provisions
    of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee's note.

**United States District Court**
For the Northern District of California

1   library, scheduled execution planning and uncooperative Defendants have prevented the Plaintiff

2   from bringing his motion to oppose the Sillen - Russell Summary Judgment motion."  (Rule 56(f)

3   Mot. at 3.)  On November 24, 2010, the Court denied Plaintiff's request for a continuance for

4   discovery pursuant to former Rule 56(f), but nonetheless extended the deadline for Plaintiff to file

5   his opposition to December 30, 2010 -- an additional eighty-three days past the original October 7,

6   2010 deadline to oppose Defendants Russell and Sillen's motion for summary judgment (docket no.

7   187).

8       In a January 7, 2011 letter (docket no. 206), Plaintiff informed the Court that his "Opposition

9   to Defendants Sillen and Russell[']s Summary Judgment Motion was destroyed by a Corrections

10   Officer."  (Jan. 7, 2011 Letter at 1.)  On February 3, 2011, the Court again extended Plaintiff's

11   deadline to file his opposition to February 14, 2011 -- forty-six days after the extended December

12   30, 2010 deadline (docket no. 218).  The Court noted, "[N]o further extensions of time will be

13   granted in this case absent exigent circumstances."  (Feb. 3, 2011 Order at 7.)

14       Plaintiff did not file his opposition to Defendants Russell and Sillen's motion for summary

15   judgment by the February 14, 2011 deadline.  Nonetheless, the Court extended the deadline a third

16   time to March 4, 2011.  (Feb. 28, 2011 Order at 3.)  In all, the Court has granted Plaintiff 147 days --

17   a nearly five-month extension -- to file his opposition to Defendants Russell and Sillen's motion for

18   summary judgment.

19       On March 1, 2011, Plaintiff filed a "Request for Addition[al] Time to File Opposition to

20   Summary Judgment Motions of Defendants Sillen, Russell, And Wilson, David, Due to Exigent

21   Circumstances" (docket no. 232), which asks for more time due to his transfer from SQSP to Solano

22   in early February of 2011.  However, Plaintiff has been afforded more than ample opportunity to

23   prepare and file his opposition, and his request for additional time is little more than a dilatory tactic.

24   Because Plaintiff has already been granted nearly five months of extensions, the Court, in its

25   discretion, DENIES Plaintiff's request for additional time to file an opposition to Defendants Russell

26   and Sillen's motion for summary judgment.

27      **B.**     <u>**Opposition to Defendants David and Wilson's Motion**</u>

28       Plaintiff did not file an opposition to Defendants David and Wilson's motion for summary

United States District Court
For the Northern District of California

1    judgment by the original December 23, 2010 deadline.  On February 2, 2011, the Court extended the

2    deadline up to and including February 14, 2011, giving Plaintiff fifty-three additional days to file his

3    opposition.  (Feb. 2, 2011 Order at 7.)

4         On February 3, 2011, Plaintiff requested another extension of time to file his opposition.  The

5    Court extended Plaintiff's deadline to March 4, 2011, and noted "[n]o further extensions of time will

6    be granted in this case absent exigent circumstances."  (February 28, 2011 Order at 3.)

7         On March 1, 2011, Plaintiff filed a "Request for Addition Time to File Opposition to

8    Summary Judgment Motions of Defendants Sillen, Russell, And Wilson, David, Due to Exigent

9    Circumstances" (docket no. 232), which requests additional time due to his transfer from SQSP to

10   Solano in early February of 2011.  The Court has already granted Plaintiff seventy-one additional

11   days to file his opposition to Defendants David and Wilson's motion for summary judgment.

12   Nevertheless, the Court finds that a brief extension of time is appropriate.  The Court GRANTS

13   Plaintiff's request for extension of time to file an opposition to Defendants David and Wilson's

14   motion (docket no. 232), pursuant to the briefing schedule outlined below.

15   **II.    <u>Request to Re-Title Motion to Strike Grigg Declaration (docket no. 237)</u>**

16        On November 23, 2010, Defendants' counsel, Matthew M. Grigg, filed a declaration in

17   support of Defendants David and Wilson's motion for summary judgment (docket no. 186).  On

18   February 10, 2011, Plaintiff filed a motion to strike that declaration (docket no. 224).  In a February

19   28, 2011 Order, the Court denied Plaintiff's motion.

20        On February 28, 2011, Plaintiff filed a "Motion For Relief re Request to Re-Title Motion to

21   Strike Declaration of Matthew M. Grigg In Support of Summary Judgment" (docket no. 237).  It

22   appears that Plaintiff wishes to retitle his motion in order for the Court to consider his arguments as

23   a partial opposition to Defendants David and Wilson's motion for summary judgment.  Accordingly,

24   the Court GRANTS Plaintiff's motion, and directs the Clerk to re-title docket number 224 as

25   "Plaintiff's Partial Opposition to the Summary Judgment Motion of Defendants David and Wilson."

26   **III.   <u>Request to Re-Title Motion to Strike Tootell Declaration (docket no. 238)</u>**

27        On August 6, 2010, Defendant Tootell filed a declaration in support of Defendants Russell

28   and Sillen's motion for summary judgment (docket no. 94).  On August 30, 2010, Plaintiff filed a

1   motion to strike that declaration (docket no. 129).  The Court denied Plaintiff's motion in its

2   February 2, 2011 Order (docket no. 218).

3           On February 28, 2011, Plaintiff filed a "Motion to Re-Title the 8-30-2010 Motion to Strike

4   the Declaration of Dr. Elena Tootell In Support of Defendants Russell and Sillen's Motion For

5   Summary Judgment" (docket no. 238).  It appears that Plaintiff wishes to retitle his motion in order

6   for the Court to consider his arguments as a partial opposition to Defendants Russell and Sillen's as

7   well as Defendants David and Wilson's motions for summary judgment.  Accordingly, The Court

8   GRANTS Plaintiff's request and directs the Clerk to re-title docket number 129 as "Plaintiff's Partial

9   Opposition to Defendants Russell and Sillen's as well as Defendants David and Wilson's Motions for

10  Summary Judgment."

11  **IV.**     **Motion to Strike Second Tootell Declaration (docket no. 240)**

12          On January 24, 2011, Defendant Tootell filed a declaration in support of Defendant Kelso's

13  motion for summary judgment (docket no. 208).  On March 3, 2011, Plaintiff filed a "Motion to

14  Strike the Declaration of Dr. Elena Tootell In Support of Defendant J. Clark Kelso's Motion for

15  Summary Judgment Or In The Alternative Partial Opposition to Defendant J. Clark Kelso's

16  Summary Judgment Motion" (docket no. 240).  Plaintiff requests that the Court strike the declaration

17  in its entirety because "Dr. Tootell has no personal knowledge of Plaintiff's medical problems.  Dr.

18  Tootell's only knowledge is what she has read in the Unit Health Records prepared by others or what

19  she has been told by others."  (Mot. to Strike at 2.)  This contention lacks merit.  Defendant Tootell

20  has the capacity to review Plaintiff's Unit Health Records and swear to their contents for this

21  litigation.  Therefore, the Court DENIES Plaintiff's motion to strike (docket no. 240).

22          In the alternative, Plaintiff asks the Court to consider the motion a partial opposition to

23  Defendant Kelso's motion for summary judgment.  (Mot. to Strike at 4.)  The Court GRANTS

24  Plaintiff's request and directs the Clerk of the Court to retitle docket number 240 as "Plaintiff's

25  Partial Opposition to Defendant Kelso's Motion for Summary Judgment."

26  **V.**      **EOT for Opposition to Defendant Kelso's Motion for Summary Judgment (docket no.**
            **242)**

27

28          On March 7, 2011, Plaintiff filed a letter (docket no. 242) requesting an extension of time to

United States District Court
For the Northern District of California

1  file his opposition to Defendant Kelso's motion for summary judgment.  The Court construes

2  Plaintiff's reference to Defendant Sillen in the first sentence of the letter to be an error, and interprets

3  the letter solely to be referring to Defendant Kelso's motion for summary judgment.  The Court

4  GRANTS Plaintiff's request for extension of time to file an opposition to Defendants Kelso's motion

5  for summary judgment (docket no. 242), pursuant to the briefing schedule outlined below.

6  **VI.    Motion to Strike Defendant Wilson's Declaration (docket no. 243)**

7      On November 23, 2010, Defendant Wilson filed a declaration in support of his motion for

8  summary judgment (docket no. 184).  On March 7, 2011, Plaintiff filed a "Motion to Strike the

9  Declaration of G. A. Wilson In Support of Motion for Summary Judgment" (docket no. 243).

10 Plaintiff argues "Dr. Wilson's Declaration has information that he cannot provide support for."

11 (Mot. at 1.)  The crux of Plaintiff's motion to strike is that Defendant Wilson is not being truthful

12 regarding the medical treatment provided to him.  In other words, to strike the declaration, the Court

13 would then have to accept Plaintiff's version of events while rejecting Defendant Wilson's.

14 However, the Court cannot make credibility determinations in connection with a summary judgment

15 motion.  Therefore, the Court DENIES Plaintiff's motion to strike (docket no. 243).

16      In the alternative, Plaintiff asks the Court to consider the motion a partial opposition to

17 Defendants David and Wilson's motion for summary judgment.  (Mot. to Strike at 1.)  The Court

18 GRANTS Plaintiff's request and directs the Clerk of the Court to retitle docket number 243 as

19 "Plaintiff's Partial Opposition to Defendants David and Wilson's Motion for Summary Judgment."

20 **VII.   Motion for Verification of Pending Court Deadlines (Docket No. 231)**

21      Plaintiff's Motion for Verification of Pending Court Deadlines (docket no. 231) is

22 GRANTED.  All parties shall abide by the briefing schedule outlined below.

23 **VIII.  Request for Referral to Magistrate Judge Vadas for Further Settlement Proceedings**

24      Plaintiff requests that the Court refer this case to Magistrate Judge Vadas for a further

25 settlement conference.  The Court agrees that it is in all of the parties' interests to seek a resolution

26 of the action without further litigation.  Accordingly, Plaintiff's request (docket no. 244) is

27 GRANTED.  Accordingly, the present case will be REFERRED to Magistrate Judge Vadas for

28 further settlement proceedings pursuant to the Pro Se Prisoner Settlement Program.  The proceedings

1   shall take place within ninety (90) days after the date of this Order; or as soon thereafter as is

2   convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall coordinate a time and

3   date for a settlement proceeding with all interested parties and/or their representatives and, within

4   ten (10) days after the conclusion of the settlement proceedings, file with the Court a report

5   regarding the settlement proceedings.

6                                    **DEFENDANTS' PENDING MOTIONS**

7   **I.      Defendants Russell and Sillen's Motion for Summary Judgment**

8            **A.      Factual Background**

9            The following facts are taken from Plaintiff's complaint, Defendants Russell and Sillen's

10  motion for summary judgment and supporting declarations, and Plaintiff's motion to strike the

11  declaration of Defendant Tootell.

12           After being released on parole, Plaintiff returned to SQSP in June 2006.  On June 17, 2006,

13  Plaintiff "alerted medical staff of his foot problems."  (Compl., Attach. at 4.)  Although he claims he

14  was "not seen for months," (id.), on July 21, 2006, Plaintiff turned down an opportunity to be seen

15  by a triage registered nurse, claiming there was "[n]o need to go now.  All better." (Tootell Decl. ¶

16  2; Ex. J.)

17           On July 26, 2006, Defendant Dr. Wilson referred Plaintiff to a podiatrist.  (Id. ¶ 3; Ex. K.)

18  On August 4, 2006, a triage registered nurse examined Plaintiff and "noted that he had corns on his

19  right foot and that he needed a podiatry consult."  (Id. ¶ 4; Ex. L.)  Plaintiff maintains that he is

20  suffering from "severe foot pain," not merely a "corn" on his toe.  (Pl.'s Reply to Def.'s Opp'n to Pl.'s

21  Mot. for Appointment of Med. Expert at 2-3.)

22           On August 30, 2006, Defendant SQSP podiatrist Dr. D. Griffith examined Plaintiff's foot.

23  (Tootell Decl. ¶ 5; Ex. M.)  Defendant Griffith found "a soft corn between his right fourth and fifth

24  toes."  (Griffith Decl. ¶ 4.)  Defendant Griffith shaved off, or "debribed," the corn with a blade and

25  "applied silver nitrate to the area where the corn was removed," which treats the wound after

26  "debribement."  (Id. ¶ 4 & n.1; Mot. for Summ. J. at 8 n.7.)

27           On October 10, 2006, contract physician Dr. J. Lopin examined Plaintiff, noted his foot

28  complaints, and referred Plaintiff back to the podiatrist.  (Tootell Decl. ¶ 6; Ex. N.)  On November

United States District Court
For the Northern District of California

29, 2006, Defendant Griffith again examined Plaintiff.  (Id. ¶ 8; Ex. O.)

On March 30, 2007, Plaintiff submitted a "Reasonable Modification or Accommodation Request through the Americans with Disabilities Act (ADA) appeals process."  (Russell Decl. ¶ 8.) Plaintiff claimed that his foot condition "limited his daily activities and caused pain and discomfort." (Id.)  On August 1, 2007, Defendant Russell wrote a memorandum denying Plaintiff's ADA appeal because it duplicated an earlier, partially-granted request, and because a medical appeal was more appropriate than an ADA appeal.  (Id.)

On April 4, 2007, Defendant Dr. C. David examined Plaintiff's foot.  (Tootell Decl. ¶ 9; Ex. P.)  Defendant David noted Plaintiff's "complaints about the 'ingrown corn' on Plaintiff's right foot and issued him a podiatry referral."  (Id.)  On April 25, 2007, Defendant David again examined Plaintiff and discussed the corn as well as his need for orthopedic shoes.  (Id. ¶ 10; Ex. Q.)

On April 16, 2007, Defendant Sillen received a letter from Plaintiff which "complained about the San Quentin medical staff as a whole."  (Sillen Decl. ¶ 8; Ex. A.)  Defendant Sillen's staff responded with a letter stating "that after review of Plaintiff's Unit Health Record, the San Quentin medical staff reported . . . that [his] alleged foot problems were being addressed."  (Id. ¶ 9; Ex. B.)

On May 23, 2007, Plaintiff again examined Defendant Griffith. (Tootell Decl. ¶ 11; Ex. R.) Defendant Griffith "debrided" Plaintiff's toe, referred him to an orthotist,[5] and recommended that he wear wider shoes.  (Griffith Decl. ¶ 4.)

On May 21, 2007, Defendant Sillen was copied on a letter sent by Plaintiff to then-Chief Medical Officer Dr. Williams, in which Plaintiff complained that his foot care problems had not yet been resolved.  (Sillen Decl. ¶ 10; Ex. C.)

On May 29, 2007, SQSP physician Dr. C. Hong examined Plaintiff's foot.  (Tootell Decl. ¶ 12; Ex. S.)  Dr. Hong noted that "podiatry is managing Plaintiff's foot issues, but that the staff physicians would continue to monitor Plaintiff's 'functional status.'"[6] (Id. ¶ 12.)

---

[5]  Orthotists are professionals in the field of orthotics, a specialty within the medical field concerned with the design, manufacture and application orthopedic devices that support or correct the function of a limb or the torso.

[6]  "Functional status refers to mobility and whether he is able to walk up stairs and walk greater than 100 yards without difficulty."  (Id. ¶ 12 n.2.)

**United States District Court**
For the Northern District of California

1    On June 7, 2007 and June 22, 2007, Plaintiff visited the San Quentin Prosthetics Clinic to fit

2    and order wider shoes.  (Id. ¶ 13; Ex. T.)

3    On July 2, 2007, Defendant Griffith examined Plaintiff a fourth time.  (Id. ¶ 14; Ex. U.)

4    Defendant Griffith again treated Plaintiff's foot with "debribement" and silver nitrate and concluded

5    that no follow-up was necessary.  (Id.; Griffith Decl. ¶ 5.)

6    On July 9, 2007, Defendant Sillen was copied on a letter sent by Plaintiff to Defendant

7    Kanan, in which Plaintiff complained that his foot care problems had not yet been resolved.  (Sillen

8    Decl. ¶ 11; Ex. D.)

9    On July 30, 2007, Plaintiff complained about his foot pain in a Health Care Services Request

10   Form.  (Tootell Decl. ¶ 15; Ex. V.)  In response, SQSP triage registered nurse S. Jackson examined

11   Plaintiff.  (Id.)

12   On August 14, 2007, SQSP contract physician Dr. Rand examined Plaintiff and referred him

13   back to Defendant Griffith.  (Id. ¶ 16; Ex. W.)

14   On August 27, 2007, Defendant Sillen's staff received two letters from Plaintiff complaining

15   about the inadequacy of the treatment of his foot.  (Sillen Decl. ¶ 12-13; Ex. E-F.)  On August 30,

16   2007, Defendant Sillen's staff responded to Plaintiff, stating: "[F]ollowing a review of Plaintiff's

17   Unit Health Record, the San Quentin medical staff reported . . . that Plaintiff's alleged foot problems

18   were being addressed."  (Id. ¶ 14; Ex. G.)

19   On September 4, 2007, Defendant David examined Plaintiff for a third time and noted that

20   Plaintiff "received his orthopedic shoes and was wearing them because they are comfortable."

21   (Tootell Decl. ¶ 17.)  Defendant David also noted that Plaintiff had a follow-up appointment

22   scheduled with podiatry.  (Id.)

23   On September 25, 2007, Dr. Rand examined Plaintiff again and reported the continued

24   presence of the soft corn between Plaintiff's fourth and fifth toes.  (Id. ¶ 18; Ex. Y.)

25   On October 10, 2007, Defendant Griffith examined Plaintiff a fifth time and treated his foot

26   with "debribement" and silver nitrate.  (Id. ¶ 19; Ex. Z; Griffith Decl. ¶ 6.)  Plaintiff wore shower

27   shoes to his appointment despite telling Defendant Griffith he had received orthopedic shoes in

28   August, 2007.  (Griffith Decl. ¶ 6.)  Defendant Griffith advised Plaintiff against wearing the shower

United States District Court
For the Northern District of California

1    shoes, which were too narrow and did not fit properly.  (Id.)

2            On December 12, 2007, Defendant Griffith examined Plaintiff a sixth time and treated his

3    foot with "debribement" and silver nitrate.  (Tootell Decl. ¶ 20; Ex. AA; Griffith Decl. ¶ 7.)  Instead

4    of his orthopedic shoes, Plaintiff wore another inmate's slip-on shoes.  (Griffith Decl. ¶ 7.)

5            On January 16, 2008, Defendant Griffith examined Plaintiff a seventh time and treated his

6    foot with "debribement" and silver nitrate.  (Tootell Decl. ¶ 21; Ex. BB; Griffith Decl. ¶ 8.)

7    Defendant Griffith noted that the soft corn "appears much improved."

8            On February 23, 2008, Plaintiff was released from SQSP on parole, one month after

9    Defendant Sillen was replaced as Receiver and nine days after Defendant Russell left SQSP.  (Mot.

10   for Summ. J. at 18.)  Plaintiff contends he was "released by San Quentin officials without any

11   medications."  (Compl., Attach. at 5.)

12       **B.    Legal Standard**

13           Summary judgment is proper where the pleadings, discovery and affidavits show that there is

14   "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a

15   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

16   case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court will grant

17   summary judgment "against a party who fails to make a showing sufficient to establish the existence

18   of an element essential to that party's case, and on which that party will bear the burden of proof at

19   trial . . .  since a complete failure of proof concerning an essential element of the nonmoving party's

20   case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

21   (1986).

22           The party moving for summary judgment bears the initial burden of identifying those

23   portions of the pleadings, discovery and affidavits, which demonstrate the absence of a genuine issue

24   of material fact.  See id. at 323.  When the opposing party will have the burden of proof at trial, the

25   moving party need only point out "that there is an absence of evidence to support the nonmoving

26   party's case."  Id.  Then, the nonmoving party must set forth specific facts showing the existence of a

27   genuine issue of material fact.  Id. at 324.

28           The court's function on a summary judgment motion is not to make credibility determinations

or weigh conflicting evidence with respect to a disputed material fact.  See TW Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence and the inferences to be drawn therefrom must be viewed in a light most favorable to the nonmoving party.  See id. at 631.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  See id.; see, e.g., Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).  Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so.  Id. at 1029.  "The district court need not examine the entire file for evidence establishing a genuine issue of fact."  Id. at 1031.

## C.    Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).  In support of Defendants Russell and Sillen's motion for summary judgment, affidavits have been filed by Defendants Russell, Sillen, Tootell and Griffith, and Attorney Martin H. Dodd.

Plaintiff verified his complaint filed on July 11, 2008 by signing it under penalty of perjury.  Also in the record are Plaintiff's amendment to the complaint (docket no. 49) and Plaintiff's motion to strike Defendant Tootell's declaration (docket no. 129), neither of which are signed under penalty of perjury.  Finally, in the record are Plaintiff's declaration in support of his amendment to the complaint (docket no. 51) and his declaration in support of his motion to strike Defendant Tootell's declaration (docket no. 130), both of which are signed under penalty of perjury.

As mentioned above, the Court has denied Plaintiff's request for an extension of time to file his opposition to Defendants Russell and Sillen's motion.  Therefore, for the purposes of this Order, the Court will treat Plaintiff's verified complaint and the aforementioned verified declarations as affidavits in opposition to these Defendants' motion under Rule 56 of the Federal Rules of Civil

United States District Court
For the Northern District of California

1   Procedure.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

2       **D.   Supervisory Liability Against Defendants Russell and Sillen**

3       Plaintiff claims Defendants Russell and Sillen are liable as supervisors of the doctors --

4   Defendants Griffith, David and Wilson -- who allegedly acted with deliberate indifference in the

5   treatment of his foot problems.

6       **1.   Applicable Law**

7       A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the

8   constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful

9   conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th

10  Cir. 1991) (en banc) (citation omitted).  A supervisor therefore generally "is only liable for

11  constitutional violations of his subordinates if the supervisor participated in or directed the

12  violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d

13  1040, 1045 (9th Cir. 1989).

14      Where a plaintiff alleges a constitutional deprivation due to a failure to train or supervise, to

15  prevail the plaintiff must demonstrate an affirmative link between the deprivation and the adoption

16  of a plan or policy, express or otherwise, showing the authorization or approval of such misconduct.

17  Bergquist v. County of Cochise, 806 F.2d 1364, 1369-70 (9th Cir. 1986), disapproved of on other

18  grounds Canton v. Harris, 489 U.S. 378, 388 (1989).  The required causal connection between

19  supervisor conduct and the deprivation of a constitutional right is established either by direct

20  personal participation or by setting in motion a "series of acts by others which the actor knows or

21  reasonably should know would cause others to inflict the constitutional injury."  Id. at 1370.

22      **2.   Analysis**

23      Plaintiff has sued Defendants Russell and Sillen in their supervisory capacities.  Specifically,

24  Plaintiff alleges that he wrote letters "outlining his complaints concerning his foot care problems and

25  other mdeical [sic] problems" to Defendants Russell and Sillen, but they did not respond to his

26  complaints.  (Compl. at 5.)

27      Defendants Russell and Sillen argue that there is no basis for supervisory liability because

28  Plaintiff cannot show any underlying deliberate indifference to his serious medical needs.  They

14

United States District Court
For the Northern District of California

1  argue that Plaintiff "received far more than adequate medical care for . . . [what] was by no means a

2  serious medical condition which was either life threatening or caused undue or prolonged suffering."

3  (Mot. for Summ. J. at 12.)  Defendants also argue that Plaintiff cannot establish supervisory liability

4  because "they were not personally involved in the care and treatment of Plaintiff," and "there is no

5  evidence that they ignored any serious medical condition brought to their attention or that they were

6  aware as supervisors of any alleged constitutional violations that they could have prevented."  (Id. at

7  13-15.)

8       Without ruling on whether Defendants Griffith, David and Wilson acted with deliberate

9  indifference, the Court finds that even viewing all facts in the light most favorable to Plaintiff, there

10  is no evidence to support the supervisory liability claims against Defendants Russell and Sillen, as

11  explained below.[7]

12              a.       **Whether Defendants Russell and Sillen Participated In or**
                         **Directed the Violations**

13

14       Plaintiff alleges that Defendants Russell and Sillen were "responsible for assuring adequate

15  health care to Plaintiff" and that he wrote letters to both Defendants "outlining his complaints

16  concerning his foot care problems."  (Compl., Attach. at 5.)  Plaintiff further claims that Defendant

17  Russell "was in charge of the medical staff that released Plaintiff without any of his medications for

18  his serious medical need at the time of his February 23, 2008 parole date."  (Id.)

19       Defendant Sillen did not "participate" in any alleged constitutional violations in the medical

20  care of Plaintiff's foot.  See Taylor, 880 F.2d at 1045.  Defendant Sillen was an administrator and did

21  not examine or treat patients.  (Sillen Decl. ¶ 3.)  As the Federal Receiver, Defendant Sillen "was

22  responsible for controlling, overseeing, supervising and directing all administrative, personnel,

23  financial, accounting, contractual, legal, and other operational functions of the medical delivery

24  component of the" CDCR.  (Id. ¶ 2.)  He made broad policy decisions affecting 160,000 inmates in

25  thirty-three prisons to "remedy the systemic problems within the prison medical health care system."

26  (Id. ¶ 3.)  He "rarely" oversaw individual inmate care, and did not have any direct involvement in

27

28  _____
       [7]  Given the Court's determination below that Defendants Russell and Sillen are entitled to
    summary judgment on Plaintiff's claims of supervisory liability, it need not address their argument
    relating to "absolute quasi-judicial immunity."  (Mot. for Summ. J. at 20-24.)

**United States District Court**
For the Northern District of California

1   Plaintiff's care.  (Id.)  That Defendant Sillen received "letters outlining [Plaintiff's] complaints" does

2   not demonstrate his participation in any alleged constitutional violations.  (Compl., Attach. at 5.)

3   Therefore, Defendant Sillen had no "personal involvement" in the medical care Plaintiff received for

4   his foot problems.  See Redman, 942 F.2d at 1446.

5          Nor did Defendant Sillen "direct" any alleged violations.  See Taylor, 880 F.2d at 1045.

6   Plaintiff alleges Defendant Sillen was "appointed to oversee the Health Care System of the

7   California Prison System, and was responsible to assure adequate medical care and treatment to all

8   prisoners confined within the prison system."  (Compl., Attach. at 2.)  Yet, Plaintiff fails to point to

9   any evidence that Defendant Sillen directed SQSP doctors to show deliberate indifference to his

10  serious medical needs.  After receiving letters from Plaintiff, Defendant Sillen's staff investigated

11  Plaintiff's complaints "on more than one occasion and was informed that San Quentin medical staff

12  was addressing the medical care of Plaintiff's foot."  (Sillen Decl. ¶ 15.)  There is no evidence that

13  Defendant Sillen knew or should have known, based on the letters he received from Plaintiff and

14  investigations his staff made, that the numerous medical examinations and treatments Plaintiff

15  received would "inflict constitutional injury."  Bergquist, 806 F.2d at 1370.  Nor is there evidence

16  that Defendant Sillen adopted a plan or policy which authorized the mistreatment of Plaintiff's foot.

17  Id. at 1369-70.  Thus, Plaintiff fails to demonstrate a "sufficient causal connection" between

18  Defendant Sillen's oversight as Receiver and any alleged deliberate indifference to his serious

19  medical needs.  See Redman, 942 F.2d at 1446.

20         Similarly, Defendant Russell did not directly "participate" in Plaintiff's care, as she was an

21  administrator and was not licensed to examine or treat patients.  Taylor, 880 F.2d at 1045.

22  Defendant Russell's various responsibilities included "reorganizing work flow process related to

23  medical intake and reception of inmates" and working to "improve and implement a multi-

24  functional, multi-disciplinary healthcare delivery system within San Quentin including medical,

25  nursing, pharmacy, medical records, laboratory, radiology, and specialty and outside hospital care."

26  (Russell Decl. ¶ 3-4.)  Plaintiff contends that Defendant Russell was "made aware of his pain and

27  suffering from his foot problems by the inmate appeals process and letters to [her]."  (Compl.,

28  Attach. at 8.)  But at no point did Defendant Russell have "personal involvement" in Plaintiff's foot

1   treatment.  See Redman, 942 F.2d at 1446.

2       Defendant Russell also did not "direct" any alleged violations.  See Taylor, 880 F.2d at 1045.

3   Because she "was not a licensed medical practitioner," Defendant Russell claims she would never

4   "override a clinical decision issued by a physician."  (Russell Decl. ¶ 7.)  Plaintiff contends that

5   defendant Russell took no action despite learning "that Plaintiff was not receiving appropriate [sic]

6   medical care and treatment for his foot claims."  (Compl., Attach. at 5.)  However, Plaintiff points to

7   no evidence that as an administrative overseer that Defendant Russell adopted a plan or policy which

8   authorized misconduct by the doctors who cared for Plaintiff.  Bergquist, 806 F.2d at 1369-70.

9   Finally, because Defendant Russell left SQSP nine days before Plaintiff's February 23, 2008 parole

10  release, she cannot be liable for his alleged release without parole medication.  (Russell Decl. ¶ 13.)

11  Plaintiff fails to show a "sufficient causal connection" between Defendant Russell's supervision of

12  SQSP's medical system and any alleged deliberate indifference to his serious medical needs.  See

13  Redman, 942 F.2d at 1446.

14          **b.      Whether Defendants Russell and Sillen Knew of the Violations
                     and Failed to Act**

15

16      Plaintiff alleges that, even after receiving the "letters outlining his complaints concerning his

17  foot care problems and other medical problems," Defendants Russell and Sillen "took no action to

18  see that adequate health was provided" to him.  (Compl., Attach. at 5.)  Therefore, he alleges they

19  "knew of the violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.  In their motion

20  for summary judgment, Defendants Russell and Sillen also acknowledge that Defendant Russell

21  "was made aware of specific complaints" about Plaintiff's foot problems through an ADA appeal.

22  (Mot. for Summ. J. at 16.)

23      The record shows that Defendant Sillen was not aware of any constitutional violations and

24  did not fail to act to prevent them.  Taylor, 880 F.2d at 1045.  Defendant Sillen received four letters

25  from Plaintiff, three of which complained about the foot care he had received.  (Sillen Decl. ¶¶ 7, 10-

26  13; Ex. A, C-F.)  Defendant Sillen's staff researched Plaintiff's complaints by contacting SQSP

27  medical staff, who reviewed his Unit Health Record.  (Sillen Decl. ¶¶ 9-13.)  Defendant Sillen's staff

28  also responded by writing two letters to Plaintiff, explaining that after reviewing his record, "the San

United States District Court
For the Northern District of California

Quentin medical staff reported to [Sillen's] office that Plaintiff's alleged foot problems were being addressed."  (Id.)  Based on the letters and further investigation with the SQSP medical staff, Defendant Sillen had no knowledge of any constitutional violations.  Further, his actions were appropriate responses based on what he knew.  See Taylor, 880 F.2d at 1045.

Likewise, the record also shows Defendant Russell was not aware of any constitutional violations and did not fail to act to prevent them.  Id.  Defendant Russell's knowledge of the situation came from "many letters" Plaintiff sent to Defendant Russell, as well as from Plaintiff's March 30, 2007 ADA appeal.  (Compl., Attach. at 8.)  Defendant Russell denied Plaintiff's appeal at the second appeal level "because the appeal was a duplicate of an earlier medical appeal that had already been partially granted," and because "the medical appeals process, as opposed to the ADA appeals process, was the more appropriate route for his appeal."  (Russell Decl. ¶ 8; Ex. H.)  Defendant Russell "instructed Plaintiff to complete a Request for Health Services form to request an appointment with a clinician to address any further concerns."  (Id.)  She did not know of any constitutional violations and was never "made aware that Plaintiff was suffering from any serious medical problems that were not being treated."  (Id. ¶ 11.)  With the knowledge she had, Defendant Russell's actions cannot constitute a failure to act.  Taylor, 880 F.2d at 1045.

The Court has considered the materials submitted in support of and in opposition to summary judgment and concludes that, even when the Court views all facts in the light most favorable to Plaintiff, no reasonable jury could return a verdict for him and against Defendants Russell and Sillen.  As a matter of law, neither Defendant Russell nor Sillen "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Id.

Accordingly, Defendants Russell and Sillen's motion for summary judgment as to Plaintiff's supervisory liability claim is GRANTED.

**E.    Negligence Claims Against Defendants Russell and Sillen**

Plaintiff's complaint includes a state law claim for negligence against all Defendants. (Compl. at 1.)  The elements of a claim for professional negligence, also referred to as medical malpractice, under California law, are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of

18

that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Budd v. Nixen, 6 Cal. 3d 195, 200 (1971), superseded in part by Cal. Civ. Proc. Code § 340.6.   Although prison employees often enjoy immunity from state tort liability, California law expressly provides: "Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice."  Cal. Gov't. Code § 845.6.

Defendants Russell and Sillen argue that they owed no duty to Plaintiff, and that there was no breach because they "did everything they could on a systemic and administrative level to ensure prompt and adequate medical care for Plaintiff's alleged foot problem."  (Mot. for Summ. J. at 18-19.)  The evidence in the record, described in detail above, supports the conclusion that Defendants Russell and Sillen were not negligent in their administrative oversight of the prison medical care system at SQSP or in their interactions with Plaintiff.  Accordingly, the Court GRANTS Defendants Russell and Sillen's motion for summary judgment on Plaintiff's negligence claim.

## II.   Defendant Griffith's Joinder to Defendants Russell and Sillen's Motion for Summary Judgment

On March 2, 2011, Defendant Griffith filed a joinder to Defendant Russell and Sillen's motion for summary judgment (docket no. 235).  Defendant Griffith joined only those sections that argued Plaintiff "did not suffer from a serious medical need and that there was no deliberate indifference to Plaintiff's condition by anyone, such that Defendants cannot be held liable for any Eighth amendment violation."  (Joinder at 1.)

As described above, the Court has granted summary judgment on other grounds.  While Defendant Griffith is a doctor accused of deliberate indifference, Defendants Russell and Sillen have been sued in their supervisory capacities.  The Court has not reached the questions of whether Plaintiff's foot problems constitute a serious medical need or whether Defendants David, Wilson and Griffith showed deliberate indifference to that need.  Rather, the Court has found that even assuming Plaintiff had a serious medical need and Defendants David, Wilson and Griffith showed deliberate indifference to that need, there is no evidence to support the supervisory liability claims against

United States District Court
For the Northern District of California

1  Defendants Russell and Sillen.  Therefore, Defendant Griffith's motion for summary judgment by

2  way of joining Defendants Russell and Sillen's motion is DENIED.[8]

3  **III.    Remaining Defendants' Motions to Compel Plaintiff's Deposition and to Extend Dispositive Motion Filing Deadline**

4          Defendants Ayers, Petrikas, Saylor, Tilton and Welch have not yet filed their dispositive

5  motions in this matter.  Instead, before the Court are these remaining Defendants' Motions to

6  Compel Plaintiff's Deposition and to Extend Dispositive Motion Filing Deadline. Even if Defendants

7  David and Wilson have already filed their motion for summary judgment, they have also joined this

8  motion.

9          On February 8, 2011, the remaining Defendants' counsel, Attorney Grigg, properly noticed

10  Plaintiff's deposition for February 24, 2011.  (Defs.' Mot. to Compel Pl.'s Depo. at 2; Grigg Decl.

11  ¶ 6.)  On February 23, 2011, Attorney Grigg alleges that he received a letter from Plaintiff in which

12  he refused to attend that scheduled deposition and also refused to sit for a deposition until he is

13  released from administrative segregation.  (Grigg Decl. ¶ 7; Ex. A.)  Specifically, Plaintiff claims

14  that he was placed in administrative segregation after he was transferred to Solano (in early February

15  of 2011) due to "no available bed space" and that he does not have access to his legal property.

16  (Grigg Decl., Ex. A.)  Plaintiff also claims that his health problems prevent him from sitting for his

17  deposition, stating: "At present time I am suffering a bout of chronic pancretitis [sic].  I wear adult

18  diapers and basically have little control over my bowels.  The above coupled with the "severe" pain

19  in my foot present complications for me to participate in a deposition."  (Id.)  Therefore, Plaintiff

20  refuses to sit for his deposition until he is "released from [administrative segregation], issued [his]

21  legal property and [is given] at least 10 days to prepare and [his] health permitting . . . ."  (Id.)

22  Plaintiff also requests for Defendants to "provide [him] with two weeks advance notice" prior to the

23  deposition, to "schedule the depositions for 1/2 hour per day commending at 1 PM," and to "confer

24

25

26          [8]  Because the Court has denied Defendant Griffith's motion for summary judgment by way
27  of joining Defendants Russell and Sillen's motion, the Court DENIES as moot Plaintiff's "Request
   for the Court to Consider the Below Listed Documents as Partial Opposition to Defendant[] Don
28  Griffith[']s Joinder to the Summary Judgment Motions of Defendants Sillen and Russell and Wilson
   and David" (docket no. 245) and "Motion for Clarification on Deadline for Plaintiff to File
   Opposition to the Joinder of Defendant Griffith" (docket no. 246).

**United States District Court**
For the Northern District of California

1   with [him] in writing as to [his] health and [his] ability to participate in a deposition" prior to

2   scheduling it.  (Id.)  In contrast, Defendants request that the Court grant their Motions to Compel

3   Plaintiff's Deposition and to Extend Dispositive Motion Filing.

4          A plaintiff must prosecute his case with "reasonable diligence" to avoid dismissal.  Anderson

5   v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976).  Plaintiff's complaint alleges that Defendants

6   were deliberately indifferent to his serious medical needs.  The medical care Plaintiff did or did not

7   receive for his alleged foot problems as well as the circumstances surrounding such allegations are

8   critical to determining the viability of Plaintiff's claims.  Moreover, Plaintiff's evidence will largely

9   consist of his version of the events.  Defendants are entitled to discover Plaintiff's version of the

10  events in order properly to evaluate the case, the possibility of a dispositive motion, and their trial

11  strategy.  Defendants allege that Plaintiff's excuse -- that his alleged health problems prevent him

12  from sitting for his deposition -- is "not credible because Plaintiff traveled to and attended the multi-

13  hour 12/29/10 settlement conference in San Francisco, and he has just recently asked the Court to set

14  another settlement conference for him."  (Grigg Decl. ¶ 7.)

15         Because Plaintiff refused to sit for the first scheduled deposition, Defendants have scheduled

16  another deposition for April 5, 2011. (Id. ¶ 8.)  Attorney Grigg sent Plaintiff a second deposition

17  notice on March 9, 2011.  (Id.)  Attorney Grigg claims that he has "not yet received a response from

18  Plaintiff to [Attorney Grigg's] letter, and fully expect [Plaintiff's] noncompliance with his obligation

19  to testify at deposition to persist."  (Id.)

20         Plaintiff has failed to provide the Court with any Doctors' notes or medical records showing

21  that he is unable to sit for his deposition.  Furthermore, the record shows he has participated in a

22  previous settlement conference before Magistrate Judge Vadas without complaining of any health

23  problems preventing him from doing so.  The Court finds unavailing Plaintiff's argument that his

24  being housed in administrative segregation for the past two months (early February, 2011 to the

25  present) without his legal property prevents him from answering Defendants' questions about this

26  lawsuit.  Plaintiff has been pursuing this lawsuit vehemently since it was filed in 2007.  Based on

27  Plaintiff's numerous filings and declarations in this action, the Court finds that he should be prepared

28  to answer Defendants' questions at a deposition even if he lacked access to his legal property for the

1  past two months.  While Plaintiff has been granted an extension of time to file his opposition based

2  on his lack of access to his legal property at Solano, Plaintiff's request for more time to prepare for a

3  deposition seems to show that he is being dilatory and is obstructing Defendants' ability to defend

4  against this lawsuit.  The Court also finds no merit to Plaintiff's request to schedule the depositions

5  for a half-hour each day beginning at 1:00 PM.  Defendants may conduct the entire deposition in one

6  sitting so long as they give Plaintiff reasonable breaks to be able to attend to his alleged health

7  problems of having "little control over [his] bowels" as well as any foot pain.

8      Accordingly, the Court GRANTS Defendants' motion to compel Plaintiff's deposition, and

9  Plaintiff shall have one final chance to sit for a complete deposition on April 5, 2011, as directed

10 below.  If he does not complete this deposition, this action could be dismissed with prejudice for

11 failure to prosecute under Federal Rule of Civil Procedure 41(b), failure to comply with a court

12 order under Federal Rule of Civil Procedure 37(b), and failure to attend his deposition under Federal

13 Rule of Civil Procedure 37(d).

14      In light of the above, the Court also GRANTS Defendants Ayers, Petrikas, Saylor, Tilton and

15 Welch's motion for an extension of time to file their dispositive motion, as well as Defendants David

16 and Wilson's motion for an extension of time to file a supplement to their motion for summary

17 judgment, pursuant to the briefing schedule outlined below.

18                                    **<u>CONCLUSION</u>**

19      For the reasons outlined above,

20      1.      Plaintiff's motion for extension of time (docket no. 232) is DENIED as to his request

21 to file an opposition to Defendants Russell and Sillen's motion for summary judgment, and is

22 GRANTED as to his request to file an opposition to Defendants David and Wilson's motion for

23 summary judgment, pursuant to the briefing schedule outlined below.

24      2.      Defendants Russell and Sillen's motion for summary judgment (docket no. 91) is

25 GRANTED.

26      3.      Defendant Griffith's motion for summary judgment by way of joinder (docket no.

27 235) is DENIED.  Defendant Griffith may still file his own motion for summary judgment, pursuant

28 to the briefing schedule outlined below.

**United States District Court**
For the Northern District of California

1    4.    Plaintiff's motion for an extension of time to file an opposition to Defendant Kelso's

2  motion for summary judgment (docket no. 242) is GRANTED, pursuant to the briefing schedule

3  outlined below.

4    5.    Defendants' Motions to Compel Plaintiff's Deposition and to Extend Dispositive

5  Motion Filing Deadline (docket no. 249) is GRANTED.  Plaintiff shall have one final chance to sit

6  for a complete deposition at the properly noticed deposition on **April 5, 2011**, even if he is not

7  represented by counsel.  The Court reminds Plaintiff that if he does not complete this deposition, this

8  action could be dismissed with prejudice for failure to prosecute under Federal Rule of Civil

9  Procedure 41(b), failure to comply with a court order under Federal Rule of Civil Procedure 37(b),

10  and failure to attend his deposition under Federal Rule of Civil Procedure 37(d).

11    Unless there are valid security concerns, the Court encourages Solano prison officials to

12  provide Plaintiff with a supply of adult diapers if he refuses to attend his deposition without them, so

13  that time and expenses are not wasted, the deposition can go forward and the case can be dismissed

14  if it does not.  However, even if prison officials do not provide Plaintiff with adult diapers, Plaintiff's

15  case could still be dismissed if he fails to attend and complete the deposition without proof in the

16  form of a Doctor's note or a medical report that he was physically unable to do so.

17    6.    The Court now directs all the remaining Defendants to file a joint dispositive motion

18  in order to allow the parties to abide by one briefing schedule, which shall govern the joint

19  dispositive motion in this action:

20    a.    No later than **May 20, 2011,** Defendants Ayers, Petrikas, Saylor, Tilton and

21  Welch as well as Defendant Griffith shall file a joint motion for summary judgment or other joint

22  dispositive motion.  If Defendants David and Wilson as well as Defendant Kelso wish to file

23  supplements to their motions for summary judgment, they shall coordinate with the aforementioned

24  Defendants and include such filings in this joint dispositive motion.  The motion shall be supported

25  by adequate factual documentation and shall conform in all respects to Federal Rule of Civil

26  Procedure 56.  If these Defendants are of the opinion that these cases cannot be resolved by

27  summary judgment, they shall so inform the Court prior to the date the joint summary judgment

28  motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

**United States District Court**
For the Northern District of California

1        b.      Plaintiff's opposition to the joint dispositive motion and his oppositions to Defendant David and Wilson's as well as Defendant Kelso's previously-filed dispositive motion shall be filed as one all-encompassing opposition with the Court and served on Defendants no later than **forty (45) days** after the date on which Defendants' joint dispositive motion is filed.

        c.      Defendants shall file a reply brief no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

        d.      The joint dispositive motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

      7.      Plaintiff's request to re-title the motion to strike Attorney Grigg's declaration (docket no. 237) is GRANTED.  The Clerk is directed to re-title docket number 224 "Plaintiff's Partial Opposition to the Summary Judgment Motion of Defendants David and Wilson."

      8.      Plaintiff's request to re-title the motion to strike Defendant Tootell's declaration (docket no. 238) is GRANTED.  The Clerk is directed to re-title docket number 129 as "Plaintiff's Partial Opposition to Defendants Russell and Sillen's as well as Defendants David and Wilson's Motions for Summary Judgment."

      9.      Plaintiff's motion to strike Defendant Tootell's declaration (docket no. 240) is DENIED, and his motion to consider the motion as a partial opposition (docket no. 240) is GRANTED.  The Clerk is directed to retitle docket number 240 as "Plaintiff's Partial Opposition to Defendant Kelso's Motion for Summary Judgment."

      10.      Plaintiff's motion to strike Defendant Wilson's declaration (docket no. 243) is DENIED, and his motion to consider the motion a partial opposition is GRANTED.  The Clerk is directed to retitle docket number 243 as "Plaintiff's Partial Opposition to Defendants David and Wilson's Motion for Summary Judgment."

      11.      Plaintiff's "Request for the Court to Consider the Below Listed Documents as Partial Opposition to Defendant[] Don Griffith['s] Joinder to the Summary Judgment Motions of Defendants Sillen and Russell and Wilson and David" (docket no. 245) and "Motion for Clarification on Deadline for Plaintiff to File Opposition to the Joinder of Defendant Griffith" (docket no. 246) are DENIED as moot.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12.     Plaintiff filed a "request that this case once again be sent back to . . . [Magistrate] Judge Vadas for settlement conference" (docket no. 244) is GRANTED.  The Court refers this action to Magistrate Judge Vadas for further settlement proceedings pursuant to the Pro Se Prisoner Settlement Program.  **The Clerk shall provide a copy of this Order to Magistrate Judge Vadas in Eureka, California.**

13.     Even if this action has been referred for further settlement proceedings, the parties are still directed to abide by the new briefing schedule outlined above.  **Because Plaintiff has been granted numerous extensions to file his opposition to the pending dispositive motion filed by Defendants David and Wilson, there will be no further extensions that will be granted as to his all-encompassing opposition.**

14.     This Order terminates docket nos. 91, 231, 232, 235, 237, 238, 240, 242, 243, 244, 245, 246 and 249.

IT IS SO ORDERED.

DATED: __3/31/11

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.07\Goldstein.5958.grantMSJR&S.wpd                    25

1

2

3   UNITED STATES DISTRICT COURT
    FOR THE
4   NORTHERN DISTRICT OF CALIFORNIA

5   DARRYL L. GOLDSTEIN,
                                              Case Number: CV07-05958 SBA
6               Plaintiff,
                                              **CERTIFICATE OF SERVICE**
7        v.

8   ROBERT SILLEN, ET AL. et al,

9               Defendant.
    _____/

10

11  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court,
    Northern District of California.
12
    That on April 1, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies)
13  in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in
    the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's
14  office.

15

16  Darryl Lee Goldstein P-79097
17  California State Prison - Solano
    2100 Peabody Rd.
18  P.O. Box 4000
    Vacaville, CA 95696
19

20  Dated: April 1, 2011

21                                  Richard W. Wieking, Clerk
                                    By: LISA R CLARK, Deputy Clerk
22

23

24

25

26

27

28

G:\PRO-SE\SBA\CR.07\Goldstein.5958.grantMSJ&R&S.wpd     26