United States District Court

For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3    DARRYL LEE GOLDSTEIN,                    )    No. C 07-5958 SBA (PR)
                                              )
4                Plaintiff,                   )    **ORDER GRANTING DEFENDANTS'**
                                              )    **MOTIONS FOR SUMMARY JUDGMENT;**
5                                             )    **DENYING PLAINTIFF'S PENDING**
     v.                                       )    **MOTIONS; AND DISMISSING WITHOUT**
6                                             )    **PREJUDICE PLAINTIFF'S REMAINING**
                                              )    **STATE LAW CLAIMS**
7    ROBERT SILLEN, et al.,                   )
                                              )    (Docket nos. 185, 277, 325, 333, 338)
8                Defendants.                  )
                                              )
9    _____       )

10                              **INTRODUCTION**

11         Plaintiff Darryl Lee Goldstein, a state prisoner currently incarcerated at California State

12   Prison - Solano, filed a <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 against multiple

13   Defendants.  He alleges constitutional violations arising from inadequate treatment of his foot

14   problems while he was incarcerated at San Quentin State Prison (SQSP) from June 28, 2006 through

15   February 23, 2008.  The Court found cognizable Plaintiff's claims that Defendants SQSP Physicians

16   Griffith, David and Wilson were deliberately indifferent in their treatment of his foot problems.

17   (Mar. 8, 2010 Order at 3.)  The Court also found cognizable Plaintiff's supervisory liability claims

18   against the following Defendants: Federal Receivers Robert Sillen and J. Clark Kelso; Federal

19   Receiver Sillen's SQSP Manager Jayne Russell; Secretary of the California Department of

20   Corrections and Rehabilitation (CDCR) James E. Tilton; former SQSP Warden Robert Ayers; SQSP

21   Associate Wardens Shelia Petrikas and Booker Welch; as well as SQSP Chief Medical Officers

22   (CMOs) Elaine Tootell, K. Saylor and Renee Kanan.  (<u>Id.</u> at 3-4; Aug. 25, 2010 Order at 6-7; Sept.

23   9, 2010 Order at 1-2.)  Finally, the Court exercised supplemental jurisdiction over Plaintiff's state

24   law claims.  (Mar. 8, 2010 Order at 5.)

25         Two motions for summary judgment and one joinder have been filed by Defendants.  In

26   addition, Plaintiff has filed two motions.  For the reasons outlined below, the Court hereby

27   GRANTS Defendants' motions for summary judgment as to all federal claims.  All claims under

28   California law are DISMISSED without prejudice.  In addition, the Court addresses Plaintiff's

1   motions below.

2   **PROCEDURAL BACKGROUND**

3       On November 27, 2007, Plaintiff filed a "Petition for Writ of Habeas Corpus."  On June 19,

4   2008, the Court found that the petition "goes entirely to the conditions of his confinement," and

5   directed Plaintiff to instead file a § 1983 civil rights complaint.  (June 19, 2008 Order at 1-2.)

6       On July 11, 2008, Plaintiff filed a § 1983 civil rights complaint against Defendants Sillen,

7   Kelso, Russell, Ayers, Petrikas, Tootell, Saylor, Kanan, Griffith, David, Wilson and Tilton, as well

8   as the deputy secretary of the CDCR who was listed as the Doe Defendant.

9       On March 8, 2010, the Court found cognizable Plaintiff's claim that Defendants Griffith,

10  David and Wilson were deliberately indifferent in their treatment of Plaintiff's foot issues.  (Mar. 8,

11  2010 Order at 3.)  The Court also found cognizable Plaintiff's supervisory liability claims against

12  Defendants Sillen, Russell and Tilton.  The Court dismissed Plaintiff's supervisory liability claims

13  against Defendants Kelso, Ayers, Petrikas, Saylor, Kanan and Tootell with leave to amend.  (Id. at

14  4.)  The Court dismissed Plaintiff's claims against the Doe Defendant.  (Id.)  Finally, the Court

15  exercised supplemental jurisdiction over the state law claims.  (Id. at 5.)

16      On May 3, 2010, Plaintiff filed an amendment to the complaint.  The Court found cognizable

17  Plaintiff's supervisory liability claims against Defendants Kelso, Ayers, Petrikas, Saylor, Kanan and

18  Tootell.  (Aug. 25, 2010 Order at 7.)

19      On May 11, 2010, Defendants Russell and Sillen filed an answer to the complaint.

20      On August 9, 2010, Defendants Russell and Sillen filed a motion for summary judgment.

21      On November 23, 2010, Defendants David and Wilson filed a motion for summary

22  judgment, which the Court addresses below.

23      On December 29, 2010, Defendants Ayers, Petrikas, Saylor, Tilton and Tootell filed a waiver

24  of their answer.

25      Also on December 29, 2010, the parties appeared before Magistrate Judge Nandor Vadas for

26  a settlement hearing.  Plaintiff and Defendant Tootell reached a settlement; therefore, all claims

27  against Defendant Tootell are DISMISSED with prejudice.  Plaintiff and the remaining Defendants

28  were unable to reach a settlement.

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

1   On January 24, 2011, Defendant Kelso filed a motion for summary judgment, which has

2   since been terminated as moot, as explained below.

3   On February 15, 2011, Defendant Griffith filed his answer to the complaint. On March 2,

4   2011, Defendant Griffith filed a joinder to the motions for summary judgment filed by Defendants

5   Russell and Sillen as well as Defendants David and Wilson.

6   On March 14, 2011, Plaintiff filed a "request that this case once again be sent back to . . .

7   [Magistrate] Judge Vadas for [a] settlement conference."

8   In an Order dated March 31, 2011, the Court denied Plaintiff's request for a fourth extension

9   of time to file his opposition and granted Defendants Russell and Sillen's motion for summary

10  judgment. (Mar. 31, 2011 Order at 19.) In that Order, the Court also granted Defendants David and

11  Wilson's motion for an extension of time to supplement their motion for summary judgment. In

12  addition, the Court granted the remaining Defendants' motion to compel Plaintiff's deposition.

13  Finally, the Court directed all remaining Defendants to file a joint motion for summary judgment no

14  later than May 20, 2011. Plaintiff was directed to file an all-encompassing opposition -- to the joint

15  motion for summary judgment as well as to the motions for summary judgment filed by Defendants

16  David, Wilson and Kelso -- within forty-five days of the filing of the joint motion for summary

17  judgment.

18  On April 5, 2011, Plaintiff's deposition was taken.

19  On May 12, 2011, Plaintiff filed a document entitled, "Request to Vacate the April 5, 2011

20  Deposition and or Protective Order," which the Court construed as his motion to strike his April 5,

21  2011 deposition from the record.

22  On May 13, 2011, Defendant Kelso and Plaintiff filed a "Stipulation for Dismissal without

23  Prejudice of Defendant Kelso." In an Order dated May 13, 2011, the Court dismissed with prejudice

24  all claims against Defendant Kelso. Accordingly, Defendant Kelso's motion for summary judgment

25  was terminated as moot.

26  On May 20, 2011, the remaining Defendants filed their joint motion for summary judgment,

27  which the Court addresses below. Plaintiff's all-encompassing opposition was due on July 5, 2011.

28  On June 28, 2011, Plaintiff submitted a document entitled, "Plaintiff's Motion Informing the

3

Court of the Further Significant Injury to Plaintiff[']s Foot Alternatively, in Support of the Plaintiff[']s Partial Opposition to the Defendants['] Motion for Summary (Joint) or Alternatively, Partial Summary Judgment."  In support of the aforementioned document, Plaintiff submitted his own declaration and a declaration from a fellow inmate named Asa Galloway.  The Court construed the document as Plaintiff's all-encompassing opposition to Defendants' joint motion for summary judgment.

On June 29, 2011, Clerk's Office staff contacted the Office Legal Affairs of the California Prison Health Care Receivership in an effort to locate Defendant Kanan, who up to that point had not been served in this action.  Supervising Attorney Jered Goldman from the Office Legal Affairs agreed to accept service on Defendant Kanan's behalf.  The Clerk therefore reissued service on Defendant Kanan.

In an Order dated July 1, 2011, the Court denied Plaintiff's fourth request for an extension of time, denied as moot his request for an enlarged copy of the April 5, 2011 deposition transcript, and denied his motion to strike the April 5, 2011 deposition from the record.  In addition, the Court denied as moot Plaintiff's "Request to Stay the Court's Ruling on Motion to Vacate Until Plaintiff Has Been Provided a Readable Copy of the April 5, 2011 Deposition," his "Request for Leave of Court to File Second Signed Signature Sheet for the Declaration of Darryl Lee Goldstein in Support of Plaintiff's Request to Vacate the April 5, 2011 Deposition or Protective Order," and his "Request for Time to Reply to the Defendants['] Opposition to Plaintiff[']s Motion to Vacate the April 5, 2011 Deposition or Protective Order."

On July 7, 2011, Plaintiff sent a letter informing the Court that, because he lacked prison library access for reasons beyond his control, he had planned to file on July 8, 2011 a memorandum in support of his all-encompassing opposition to the joint motion for summary judgment.

On July 12, 2011, Plaintiff filed a document entitled "Memorandum in Opposition to Joint Motion for Summary Judgment, or Alternatively Partial Summary Judgment," along with several declarations and medical documents.  On the same date, Plaintiff requested that the Court consider re-titling the June 28, 2011 filings that the Court construed as his "All-Encompassing Opposition to Joint Motion for Summary Judgment."  Alternatively, Plaintiff requested that the Court accept the

July 12, 2011 filings as submissions in support of his June 28, 2011 filing.

On July 14, 2011, Defendants requested that the settlement conference set for July 26, 2011 be continued until after the Court has resolved the pending motions for summary judgment.

On July 15, 2011, Defendant Kanan filed her answer to the complaint and a joinder to the remaining Defendants' joint motion for summary judgment.

On July 20, 2011, Defendants filed a joint reply to Plaintiff's all-encompassing opposition.

On July 21, 2011, the Court denied Defendants' request to continue the July 26, 2011 settlement conference.

Also on July 21, 2011, Plaintiff filed a document entitled, "Request to Sever the Claims Against Defendant Rene [sic] Kanan from the Present Complaint."  As explained below, the Court construes this motion as a request for an extension of time to compel Defendant Kanan to produce discovery.

On July 26, 2011, Plaintiff filed an "emergency" motion to stay the Court's ruling on summary judgment until he could obtain further evidence to substantiate his claim.  He also filed an "Opposition to the Joinder of Defendant Kanan to the Joint Motion for Summary Judgment Filed by the Defendants[] 5/20/11 (Doc 277) [and] Addendum to Motion to Sever Request for Order re Mail to the Plaintiff From Defendants."

Also on July 26, 2011, the parties appeared before Magistrate Judge Vadas for a settlement hearing.  On July 27, 2011, Magistrate Judge Vadas filed a report stating that the parties did not reach a settlement.  He noted, however, that the parties "agree[d] to a telephone conference after the district court's order on the summary judgment motion to resolve any remaining issues."  (July 27, 2011 Report by Magistrate Judge Vadas at 2.)

On August 4, 2011, Defendants filed a joint opposition to Plaintiff's "Request to Sever the Claims Against Defendant Rene [sic] Kanan from the Present Complaint" and a reply to Plaintiff's opposition to Defendant Kanan's joinder to the joint motion for summary judgment.

## **FACTUAL BACKGROUND**

**I.**   **Plaintiff's Version**

   **A.**   **Deliberate Indifference to Serious Medical Needs**

United States District Court

For the Northern District of California

1   Plaintiff alleges that while he was incarcerated at SQSP from June 28, 2006 to February 23,

2   2008, Defendants SQSP Physicians Wilson and David and SQSP Podiatrist Griffith were

3   deliberately indifferent to his serious medical needs, namely, his "serious foot problems."   (Compl.

4   at 4; Am. to Compl. at 11.)

5   Plaintiff arrived at SQSP on or about June 28, 2006.  (Am. to Compl. at 11.)  Plaintiff claims

6   that the San Mateo County medical staff sent to SQSP medical staff paperwork that indicated he

7   suffered from foot problems.  (Id.)  Plaintiff also asserts that he alerted SQSP medical staff to his

8   foot problems, but that he was not seen "for months."  (Id.)

9   Plaintiff alleges that Defendant Griffith knew of his need for foot surgery and other

10   treatments from June 28, 2006 through February 23, 2008, but failed to provide appropriate care.

11   (Compl. at 7.)  Plaintiff also claims that Defendant Wilson examined him numerous times at the

12   reception unit and knew of his foot problems.  (Id. at 7.)  Further, Plaintiff alleges that Defendant

13   Wilson knew that he risked significant injury unless he received appropriate treatment.  (Id. at 7-8.)

14   Nonetheless, Defendant Wilson took no action.  (Id. at 8.)

15   From October 2006 to March 2007, Plaintiff was housed in the Administrative Segregation

16   Unit (ASU), where was allegedly denied "appropriate foot care treatment."  (Am. to Compl. at 11.)

17   After being released from the ASU in March 2007, Plaintiff claims that Defendant Griffith, the

18   podiatrist at SQSP, told him "several time(s)" that he would "most likely" need an operation on his

19   "right foot little toe area."  (Id.)  Plaintiff never had the operation.  (Id. at 5.)

20   Plaintiff contends that Defendant David, the Unit Doctor in the North Block Unit of SQSP,

21   where he was housed from March 2007 to February 2008, took no action in remedying his foot

22   problems, even though he wrote Defendant David many letters describing his pain and his need for

23   appropriate shoes.  (Id.)

24   Plaintiff was released from SQSP on February 23, 2008.  By then he had still not undergone

25   an operation on his foot.  (Id.)  In addition, Plaintiff alleges that Defendant Saylor, allegedly SQSP's

26   CMO on February 23, 2008, failed to provide him parole medications.  (Am. to Compl., "Claims," at

27

28

6

3.)[1]  Plaintiff originally claimed that this failure resulted in "serious medical problems," including epileptic seizures, a head injury, and elevated eye pressure, among others.  (Id. at 4.)  However, at his deposition, Plaintiff claimed that he obtained his medications at San Francisco General Hospital on the same day he was released.  (Decl. Goode; Pl.'s Depo. at 120.)  Therefore, Plaintiff clarified that he did not suffer any injuries or pain as a result of the failure to provide medications between his release on February 23, 2008 and his receipt of all his medications at the hospital later that same day.  (Id. at 121-23.)

**B.    Supervisory Liability**

Plaintiff argues that Defendants Tilton, Ayers, Petrakis, Welch, Saylor and Kanan are liable for negligence and deliberate indifference to his serious medical needs in their capacities as supervisors.

Plaintiff claims that Defendants Kanan, Petrakis, Saylor and Ayers had actual and constructive knowledge of his "unconstitutional" medical treatment, because they received a copy of his state habeas petition detailing his need for treatment.  (Am. to Compl. at 13; Id., "Claims," at 4.)

When Plaintiff arrived at SQSP in June 2006, Defendant Kanan was CMO and was responsible for reviewing his medical records and devising an appropriate course of treatment.  (Am. to Compl. at 11.)  Defendant Kanan was aware in June 2006 that Plaintiff needed foot surgery.  (Id.; "Pl.'s Request to Sever the Claims against Def." Ex. A.)  Defendant Kanan was likewise aware that Plaintiff had an established right to medical care.  (Id.)  She nevertheless took no action.  (Id.)  Plaintiff alleges that Defendant Kanan "intentionally" withheld medical treatment from him.  (Id.)  Plaintiff also claims that his foot pain consequently worsened; the "growth spread deeper."  (Id.)

Plaintiff contends that Defendants Saylor and Kanan, CMOs at SQSP, were responsible for ensuring that Plaintiff receive adequate foot care and appropriate medications upon his release from state prison, but failed to do so.  (Am. to Compl. at 12.)  In addition, Plaintiff claims that Defendants Saylor and Kanan failed to heed the recommendations of Dr. Pratt that Plaintiff undergo foot surgery.  (Id. at 10, 12.)

---

[1] Plaintiff divided his amendment into two written parts.  The first part covers pages "1" to "17," while the second part, labeled "Claims," covers another ten pages numbered "1" through "10."

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff alleges that Defendants Tilton and Ayers were on notice that he was not receiving

2    appropriate medical care during the relevant time period, because he had sent them several letters.

3    (Id.)  Plaintiff alleges that Defendant Ayers had been alerted by numerous letters and 602 appeals as

4    to his foot problems; however, Defendant Ayers refused to order prison staff to provide him

5    appropriate care.  (Am. to Compl. at 14; Id., "Claims," at 9.)  Furthermore, Plaintiff claims that

6    Defendants Ayers and Saylor were aware of his foot problems during the relevant time period

7    because of a court order served on them by the California Court of Appeal, which had found that he

8    suffered from foot problems and needed treatment.  (Am. to Compl., "Claims," at 10.)  Plaintiff

9    contends that Defendants Ayers and Saylor failed to provide him appropriate care.  (Id.)

10   Plaintiff alleges that Defendant Petrakis, who was a warden in the reception unit in June

11   2006 when he arrived at SQSP, took no action even after he made Defendant Petrakis aware of his

12   foot problems.  (Compl. at 7; Am. to Compl. at 17.)  Moreover, Plaintiff claims that Defendant

13   Petrakis should have placed him into "lower-bunk" housing because of his medical needs but failed

14   to do so.  (Am. to Compl., "Claims," at 9.)

15   **II.   Defendants' Version**

16   In June 2006, while incarcerated at SQSP, Plaintiff requested a podiatry evaluation for an

17   unspecified "foot problem."  (Decl. Tootell ¶ 2, Ex. J.)  Plaintiff recalls having callused heels and

18   feeling pain between his right foot's fourth and fifth toes.  (Pl.'s Depo., 32:22-33:7.)  On July 17,

19   2006, however, he refused to attend an appointment with a triage nurse, explaining that he had "no

20   need to go now" because he was "[a]ll better."  (Decl. Tootell ¶ 2, Ex. J.)

21   On July 26, 2006, Defendant Wilson performed a comprehensive evaluation, examining

22   Plaintiff's head, eyes, ears, nose, throat, heart, lungs, abdomen and extremities.  (Decl. Wilson ¶ 6.)

23   On the basis of Defendant Wilson's observations and what Plaintiff reported, Defendant Wilson

24   diagnosed a variety of conditions, including diabetes and bipedal bunions caused by calluses on

25   Plaintiff's big toes, which Defendant Wilson characterized as "minor" and "non-acute" problems

26   caused by ill-fitting shoes.  (Decl. Wilson ¶¶ 6-7; Decl. David ¶ 4.)  Defendant Wilson then

27   submitted a referral to a podiatrist for routine callus trimming.  (Decl. Wilson ¶ 6; Ex. 1 at 1; Decl.

28   Tootell ¶ 3; Ex. K.)

United States District Court

For the Northern District of California

1    On August 4, 2006, a triage registered nurse examined Plaintiff and noted his problem with

2    corns.  (Decl. Tootell ¶ 4; Ex. L.)

3    On August 30, 2006, in response to Defendant Wilson's podiatry referral, Defendant Griffith

4    evaluated Plaintiff and treated him by trimming his calluses and a soft corn between his right fourth

5    and fifth toes; Defendant Griffith also applied silver nitrate to the area where a corn had been

6    removed.  (Decl. Griffith ¶ 2; Decl. Wilson, Ex. 1 at 4.)  Dr. Griffith concluded that Plaintiff did not

7    require follow-up care.  (Decl. Griffith ¶ 2.)

8    On October 10, 2006, Dr. Lopin evaluated Plaintiff's foot after hearing complaints about a

9    corn on the fifth toe.  Dr. Lopin referred Plaintiff to Defendant Griffith.  (Decl. Gerbert ¶ 6(e); Decl.

10   Tootell ¶ 6; Ex. N.)

11   On November 29, 2006, Defendant Griffith examined Plaintiff's feet and noted that the soft

12   corn between his right foot's fourth and fifth toes had returned.  Dr. Griffith debrided the corn and

13   advised Plaintiff to obtain wider, better-fitting shoes to help prevent corn development.  (Decl.

14   Tootell ¶¶ 6-8; Decl. Griffith ¶ 3;  Decl. Gerbert ¶ 6(g).)

15   On April 4, 2007, Defendant David first evaluated Plaintiff.  (Decl. David ¶ 4.)  Plaintiff

16   made numerous complaints and requested multiple "chronos."[2]  (Id.)  Defendant David noted that

17   Defendant Griffith had recommended that Plaintiff obtain wider shoes when he last treated Plaintiff.

18   (Id.)  Defendant David observed a soft callus between Plaintiff's right fourth and fifth toes and a

19   moist rash, symptomatic of "Athlete's Foot."  (Id. ¶¶ 5-6.)  Defendant David observed that the skin

20   on Plaintiff's foot was intact and that there were no signs of infection or swelling.  (Id.)  Defendant

21   David then ordered anti-fungal cream and submitted a request for a follow-up appointment with a

22   podiatrist.  (Id.)  During that evaluation, Plaintiff wore black canvas shoes that appeared to fit well.

23   (Id., ¶ 10; Decl. Gerbert ¶ 6(h).)

24   On April 25, 2007, Defendant David examined Plaintiff to follow up on test results and to

25   address his foot-related complaints.  (Decl. David ¶ 10.)  Plaintiff wore plastic shower shoes and

26   explained that he had discarded the black canvas shoes he had been wearing on April 4 because they

27

28        [2]  A "chrono" is a form that allows prisoners to request certain medical accommodations as
deemed necessary by medical staff.

9

were "trashed." (Id.) During the evaluation, Plaintiff complained about "diffuse foot pain." (Id.) Despite such complaints, Plaintiff reported that he could walk four laps at a time and that he felt no discomfort in his foot that would limit his exercise. (Id.) Upon examination, Plaintiff had good pedal pulses and good foot sensation, intact skin on his foot, and no signs of cyanosis, clubbing, erythema, edema, soft tissue swelling, skin discoloration, drainage or infection. (Id. ¶ 11.) Plaintiff had mild calluses on the medial sides of both big toes and a small callus between his fourth and fifth toes. (Id.) He appeared not to be in distress, but complained of pain when Defendant David palpated the soles of his feet. (Id.) On the basis of these findings, Defendant David concluded that Plaintiff might have plantar fasciitis,[3] perhaps caused by a combination of his walking exercise and obesity. (Id.)

Defendant David explained to Plaintiff that Defendant Griffith had recommended that Plaintiff obtain wide-toed shoes during the last evaluation. (Decl. David ¶ 12.) Plaintiff said he had not worn state-issued shoes since 2003 when only narrow boots were available.[4] (Id.) Consequently, Defendant David called a property officer and learned that the prison was then carrying boots in wide widths. (Id.) Defendant David also conferred with Plaintiff about obtaining wide width shoes through the prison catalog. (Id.) Plaintiff said wide width shoes were unavailable through the catalog, but Defendant David's review of the catalog confirmed otherwise. (Id.) Plaintiff explained further that he could not order shoes because of his custody status and that he could order packages only once each quarter. (Id.) Defendant David was unsure whether Plaintiff's issue was a real or perceived problem and planned to follow up with custody staff to confirm whether Plaintiff was eligible to receive mail-order shoes. (Id.)

Defendant David advised Plaintiff to consult a property officer about obtaining a better-fitting pair of shoes and to return the next day so she that could confirm that the shoes fit properly. (Id.) Defendant David also gave Plaintiff a chrono so he could have insoles to provide extra cushioning and thereby reduce any foot-related discomfort. In addition, she ordered Ibuprofen to

---

[3] "Plantar fasciitis" is inflammation of the thick tissue on the bottom of the foot.

[4] From 2002 through 2003, part of which time Plaintiff was incarcerated at SQSP, he developed corns and calluses from wearing tight shoes. (Pl.'s Depo. at 14, 16, 17.)

United States District Court

For the Northern District of California

1   manage his foot-related pain (two 600 mg tablets, twice daily, as needed).  (Id.)

2          Plaintiff did not return the next day to confirm that the shoes that he was supposed to have

3   obtained from the property officer fit properly.  (Decl. David ¶ 12.)  Defendant David nonetheless

4   continued to follow-up with Plaintiff's shoe-related concerns.  (Id.; Pl.'s Depo., 63:10-11.)  She

5   issued an order and a chrono on May 7, 2007, allowing Plaintiff to order better-fitting shoes from an

6   approved vendor.  (Id.)

7          On May 7, 2007, the Division of Correctional Health Care Services responded to Plaintiff's

8   complaints about various aspects of his medical care, stating: "There was no indication in the

9   record that you have been denied medical care and treatment for the health concerns you raised

10  in your correspondence."  (Pl.'s Jul. 11, 2008 Req. for Judicial Not. at 6.)

11         On May 23, 2007,  Defendant Griffith examined Plaintiff's feet and noted that his soft corn

12  had developed again between his right fourth and fifth toes.  (Decl. Griffith ¶ 4.)  Defendant Griffith

13  debrided the corn and referred Plaintiff to an orthotist so that he could be prescribed wider, better-

14  fitting shoes to prevent the corn from developing again.  (Id.; Decl. David  ¶ 14.)

15         On May 29, 2007, Dr. C. Hong examined Plaintiff and documented his foot-related

16  complaints.  (Decl. Tootell ¶ 12; Ex. S.)  Dr. Hong noted that the podiatry department was treating

17  Plaintiff's foot issues and that staff physicians would continue to monitor his condition.  (Id.)

18         On June 5, 2007, Plaintiff refused to allow Defendant David to treat him because he was

19  concerned about the care that Defendant David was providing.  (Decl. David ¶ 15.)

20         On June 7 and 22, 2007, Plaintiff attended an appointment at the SQSP Prosthetics Clinic for

21  the fitting and ordering of wider shoes.  (Decl. Gerbert ¶ 6(l); Decl. Tootell ¶ 13; Ex. T.)

22         On June 11, 2007, Plaintiff attended an appointment with Defendant David and complained

23  about brief chest pain four or five days prior.  (Id.; Decl. David ¶ 16.)  After her evaluation of

24  Plaintiff, Defendant David submitted a cardiology consult request.  (Id.)

25         On June 29, 2007, Defendant David submitted a request for Plaintiff to receive prompt

26  podiatry evaluation to treat his sore small toe.  (Decl. David ¶ 17.)  Three days later, on July 2,

27  2007, Defendant Griffith debrided the soft corn and treated it with silver nitrate.  (Id.)  Defendant

28  Griffith concluded that Plaintiff's condition required no follow-up care.  (Decl. Griffith ¶ 5.)

United States District Court

For the Northern District of California

1      On July 12, 2007, for unexplained reasons, Plaintiff refused to attend a medical appointment

2   with Defendant David.  (Decl. David ¶ 18.)

3      On July 16, 2007, Dr. Lisa Pratt examined Plaintiff in a routine high-risk patient review.

4   (Decl. Gerbert  ¶ 6(p).)  She evaluated Plaintiff's foot and noted the presence of a soft corn between

5   his right fourth and fifth toes.  (Id.)  She was aware that this corn had been present before and been

6   treated by Defendant Griffith with debridement and the application of silver nitrate to the area where

7   the corn had developed.  (Id.)  She recommended that Plaintiff undergo surgical treatment for his

8   soft corn, but only if a podiatrist felt that such treatment was appropriate.  (Id.)  She also ordered

9   continued routine debridement by a podiatrist and better-fitting shoes.  (Id.)

10      On August 14, 2007, Dr. Rand examined Plaintiff's feet and documented the presence of a

11   soft corn between his right fourth and fifth toes.  (Decl. Gerbert ¶ 6(q).)  Dr. Rand referred Plaintiff

12   to a podiatrist for consultation and evaluation.  (Id.)

13      On September 4, 2007, Plaintiff again attended an appointment with Defendant David for a

14   follow-up evaluation.  (Decl. David ¶ 21.)  Plaintiff reported that he had received the orthopedic

15   shoes provided by an orthotist.[5]  (Id.)  He told Defendant David that the shoes were comfortable and

16   that he wore them regularly.  (Id.)  Plaintiff, however, came to the evaluation that day wearing

17   plastic shower shoes.  (Id.)  Plaintiff told Defendant David that he walked the track approximately

18   four laps each day for a total of about two miles.  (Id.)  Defendant David examined Plaintiff's feet

19   and noted a mild callus formation between his fourth and fifth toes.  (Id.)  She anticipated that

20   Plaintiff would attend a follow-up appointment with podiatry.  (Id.)  She received a new assignment

21   thereafter and had no further involvement with Plaintiff's care.  (Id. ¶ 22.)

22      On October 10, 2007, Defendant Griffith examined Plaintiff.  (Decl. Griffith ¶ 6; Decl.

23   Gerbert ¶ 6(s).)  Plaintiff was wearing plastic shower shoes but told Defendant Griffith that he had

24   received his new shoes from the orthotist in August 2007.  (Id.)  Defendant Griffith examined

25   Plaintiff's foot and noted that the soft corn had developed again.  (Id.)  He debrided the corn and

26   applied silver nitrate to the area of debridement.  (Id.)  He noted that Plaintiff's shower shoes were

27

28      [5] Orthotists specialize in designing and fitting orthopedic braces such as surgical supports
and corrective shoes.

United States District Court

For the Northern District of California

1   ill-fitting and advised Plaintiff to discontinue wearing them; he suggested that Plaintiff wear the new

2   shoes from the orthotist.  (Id.)

3        On November 5, 2007, Plaintiff attended an appointment with Dr. Rand.  Plaintiff voiced no

4   foot-related complaints at this appointment.  (Decl. Gerbert ¶ 6(p).)

5        On December 12, 2007, Defendant Griffith examined Plaintiff.  As Plaintiff had done in the

6   past, he was wearing ill-fitting shoes during the appointment.  (Decl. Griffith ¶ 7.)  Defendant

7   Griffith examined Plaintiff's foot and noted that the soft corn between his right fourth and fifth toes

8   had reformed.  (Id.)  Defendant Griffith debrided the corn and applied silver nitrate.  (Id.)

9        On December 27, 2007, Dr. Rand examined Plaintiff.  Plaintiff made no foot-related

10  complaints during that evaluation.  (Decl. Gerbert ¶ 6.)

11       On January 15, 2008, Dr. Rand again examined Plaintiff.  Plaintiff made no foot-related

12  complaints.  (Id.)

13       On January 16, 2008, Plaintiff attended an appointment with Defendant Griffith.  (Decl.

14  Griffith ¶ 8.)  Defendant Griffith examined Plaintiff's foot and noted that the soft corn had

15  redeveloped.  (Id.)  Defendant Griffith debrided it, applied silver nitrate, and noted that the soft corn

16  appeared much improved.  (Id.)

17       On February 23, 2008, which was a Saturday, Plaintiff was paroled and released from SQSP.

18  (Decl. Goode; Pl.'s Depo. at 118:11-119.)  Plaintiff claims that unnamed prison officials told him

19  that he would have to wait until Monday, February 25, 2008, to receive his parole medications.  (Id.

20  at 119.)  For some unexplained reason, prison officials had not provided medication in time for

21  Plaintiff's parole and gave him another option of leaving without medications.  (Id.)  Plaintiff

22  decided not to wait and, instead, he chose the latter option when he left the prison on February 23,

23  2008, after a prison official supposedly told him, "Your ride is here."  (Id.)  Plaintiff obtained his

24  medications later that same day at San Francisco General Hospital.  (Id. at 120.)  Plaintiff

25  subsequently suffered no injuries or pain as a result of the failure to provide medications between his

26  release on February 23, 2008 and his receipt of all his medications at the hospital later that same day.

27  (Id. at 121-23.)

28                    **DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

United States District Court
For the Northern District of California

# I.     Legal Standard

Summary judgment is properly granted when no genuine disputes of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  If the moving party discharges its burden by negating an essential element of the non-moving party's claim or

defense, it must produce affirmative evidence of such negation.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1105 (9th Cir. 2000).

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  <u>Id.</u>  This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  <u>Id.</u> at 1107.

If the moving party does meet its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  <u>Bhan</u>, 929 F.2d at 1409; <u>Nissan</u>, 210 F.3d at 1105.  "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory."  <u>Rodriguez v. Airborne Express</u>, 265 F.3d 890, 902 (9th Cir. 2001).  However, "[c]onclusory allegations unsupported by factual data cannot defeat summary judgment."  <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003); <u>see</u> <u>also</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of bias not sufficient to carry nonmoving party's burden).

It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  <u>Id.</u>  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  <u>See id.</u>; <u>see, e.g.</u>, <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).  Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so.  <u>Id.</u> at 1029.  "The district court need not examine the entire file for evidence establishing a genuine issue of fact."  <u>Id.</u> at 1031.

**II.    <u>Evidence Considered</u>**

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002).  In support of Defendants' motions for summary judgment, affidavits have been filed by Defendants

Wilson and David, Drs. Gerbert and Tootell, and Defendant Griffith's attorney, Robert V. Good, all signed under penalty of perjury.  Attorney Good has submitted a certified copy of Plaintiff's April 5, 2011 deposition.

Plaintiff verified his complaint filed on July 11, 2008 by signing it under penalty of perjury.  Also in the record are: Plaintiff's amendment to the complaint; his declaration in support of his amendment to the complaint; documents attached to his request for judicial notice; his all-encompassing opposition; the documents filed in support of that opposition; and affidavits by Plaintiff, by his acquaintance David Stokely, as well as by inmates Asa Galloway and Enrique Oquendo, all of which are signed under penalty of perjury.

**III.   Discussion**

As mentioned above, the remaining motions for summary judgment before the Court are Defendants David and Wilson's motion as well as the joint motion filed by the remaining Defendants; therefore, the Court will resolve these motions below.

Plaintiff alleges that Defendants David, Wilson and Griffith are liable for deliberate indifference to his serious medical needs because, as doctors managing his care at SQSP, they failed to provide adequate treatment for his foot problems.  Plaintiff argues further that these doctors provided only "cosmetic" care -- including trimming calluses and debriding corns -- and that "a reasonable jury could conclude that the defendants['] treatment . . . consisted of little more than documenting Plaintiff's worsening condition and . . . continuing . . . ineffective foot care."  (Pl.'s Brief Informing the Court of His Serious Medical Problems at 10.)

**A.     Deliberate Indifference to Serious Medical Needs**

**1.     Applicable Law**

Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The analysis of a claim of "deliberate indifference" to serious medical needs involves an examination of two elements: (1) the existence of a prisoner's serious medical needs and (2) the establishment of a deliberately

United States District Court

For the Northern District of California

1    indifferent response by the defendants to those needs.  McGuckin, 974 F.2d at 1059.

2         A serious medical need exists if the failure to treat a prisoner's condition could result in

3    further significant injury or the "wanton infliction of unnecessary pain." Id. (citing Estelle, 429 U.S.

4    at 104).  The existence of an injury that a reasonable doctor or patient would find important and

5    worthy of comment or treatment; the presence of a medical condition that significantly affects an

6    individual's daily activities; or the existence of chronic and substantial pain are examples of

7    indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60 (citing Wood v.

8    Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

9         A prison official is deliberately indifferent if he or she knows that a prisoner faces a

10   substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

11   Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts

12   from which the inference could be drawn that a substantial risk of serious harm exists," but he "must

13   also draw the inference." Id.  If a prison official should have been aware of the risk, but was not,

14   then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v.

15   County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

16        In order for deliberate indifference to be established, therefore, there must be a purposeful act

17   or failure to act on the part of the defendant and a resulting harm.  See McGuckin, 974 F.2d at 1060;

18   Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Such

19   indifference may appear when prison officials deny, delay or intentionally interfere with medical

20   treatment, or it may be shown in the way in which prison officials provide medical care.  See

21   McGuckin, 974 F.2d at 1062.

22        "A difference of opinion between a prisoner-patient and prison medical authorities regarding

23   treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

24   1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to

25   pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate

26   indifference.  See Franklin, 662 F.2d 1337, 1344 (9th Cir. 1981); see also Toguchi v. Chung, 391

27   F.3d 1051, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v.

28   Craven, 433 F.2d 873, 874 (9th Cir. 1970).  In order to prevail on a claim involving choices between

17

alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 551 U.S. at 837), cert. denied, 519 U.S. 1029 (1996).

Neither negligence nor gross negligence is actionable under § 1983 in the prison context. See Farmer 511 U.S. at 825-36, n.4 (1994); Wood, 900 F.2d at 1334 (gross negligence insufficient to state claim for denial of medical needs to prisoner). Furthermore, a claim of medical malpractice is insufficient to make out a violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1060-61; Franklin, 662 F.2d at 1344.

**2.   Analysis**

The threshold question in a claim for deliberate indifference to serious medical needs is whether the plaintiff suffered from a serious medical need. McGuckin, 974 F.2d at 1059. Defendants concede that Plaintiff suffered from foot problems and sought out a podiatrist for treatment. Defendants argue, however, that Plaintiff's foot issues were minor and did not pose a grave risk to Plaintiff's health. Notwithstanding Defendants' evidence as to the non-acute and relatively inconsequential nature of Plaintiff's foot condition, the Court finds substantial evidence in the record indicating that Plaintiff's foot condition was a serious medical need that significantly affected his daily activities. See McGuckin, 974 F.2d at 1059-60.

Plaintiff argues that the course of treatment made available to him (i.e., pain medications, consultations with physicians, and specialist review) was inadequate. (Compl. at 7-8.) Specifically, he alleges that Defendants acted with deliberate indifference when: (1) Defendant Griffith, an SQSP podiatrist, failed to perform an operation on Plaintiff's right foot, even though Plaintiff contends that such an operation was necessary to remedy his serious pain and suffering; (2) Defendant Wilson, an SQSP physician, failed to provide him a podiatric referral "for months" and refused to follow up on his condition; and (3) Defendant David, an SQSP physician, failed to remedy his foot ailment and provide appropriate pain medication. Meanwhile, Defendants contend that Plaintiff has failed to show that they deliberately disregarded a severe risk of harm arising from Plaintiff's injury during

United States District Court

For the Northern District of California

1   the course of their evaluations and treatment.  They assert that they took reasonable and prompt

2   steps to address Plaintiff's complaints of pain and treated him consistently and in accordance with

3   the appropriate medical standards.  See Farmer, 511 U.S. at 837.

4   In order to prevail on a claim of deliberate indifference, Plaintiff must show that Defendants

5   knew he faced a substantial risk of serious harm and failed to take reasonable steps to abate it.  See

6   Farmer, 511 U.S. at 837.  In cases involving choices between alternative courses of treatment,

7   Plaintiff must show that the course of treatment made available to him was medically unacceptable

8   under the circumstances and was chosen in conscious disregard of an excessive risk to his health.

9   See Toguchi, 391 F.3d at 1058.

10   As discussed below, the record shows that Plaintiff's foot was examined on at least ten

11   different occasions by Defendants Wilson, David and Griffith from June 28, 2006 through February,

12   23 2008.  Further, the record establishes that Defendants' treatment of Plaintiff's foot -- trimming

13   calluses and debriding corns -- indicates no intention or deliberation on the part of Defendants to

14   harm Plaintiff or refrain from providing necessary medical treatment.  Accordingly, the Court finds

15   that Plaintiff offers no evidence to suggest that the course of treatment was medically unacceptable

16   under these circumstances or chosen in conscious disregard of an excessive risk to Plaintiff's health.

17   See id. at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 551 U.S. at

18   837), cert. denied, 519 U.S. 1029 (1996).  Consequently, as further explained below, Plaintiff has

19   failed to raise a triable issue of fact that his complaints of pain and discomfortrequired more

20   treatment than he received in order to be considered medically acceptable under the Constitution.

21   See id.

22                              **a.       Defendant Griffith**

23   Plaintiff argues that Defendant Griffith told him that he should undergo foot surgery to

24   reduce the pain and discomfort in his foot.  Defendant Griffith denies that he recommended foot

25   surgery.  Moreover, Defendant Griffith has offered testimony that the foot appeared "much

26   improved" when he last examined Plaintiff.

27   Plaintiff has failed to show that, throughout seven appointments from June 28, 2006 through

28   February, 23 2008, Defendant Griffith purposefully acted or failed to act with the deliberate

19

United States District Court

For the Northern District of California

1    intention of causing injuries to Plaintiff.  See McGuckin, 974 F.2d at 1060.  In addition, Plaintiff

2    fails to demonstrate that Defendant Griffith's course of treatment was medically unacceptable under

3    the circumstances or that Defendant Griffith "chose this course in conscious disregard of an

4    excessive risk to the plaintiff's health."  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90

5    F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 551 U.S. at 837), cert. denied, 519 U.S. 1029 (1996).

6    In the absence of sufficient evidence by Plaintiff demonstrating that Defendant Griffith purposefully

7    intended to inflict harm on him or that Defendant Griffith's care was medically unacceptable,

8    Plaintiff shows at most a difference of medical opinion, which does not give rise to a § 1983 claim.

9    See Franklin, 662 F.2d at 1344.  Similarly, a showing of nothing more than a difference of medical

10   opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of

11   law, to establish deliberate indifference.  See Toguchi, 391 F.3d at 1058, 1059-60; Sanchez v. Vild,

12   891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

13          Plaintiff argues in his "Motion Informing the Court of the Further Significant Injury to

14   Plaintiff[']s Foot" that his current condition, including his difficulty with walking and his need for a

15   cane, demonstrates that Defendant Griffith's course of treatment from June 28, 2006 through

16   February 23, 2008 manifested deliberate indifference.  This argument, however, is unavailing.  In

17   particular, Plaintiff's claim that his current condition is entirely the result of constitutionally

18   inadequate treatment that occurred three years ago is unsupported in the record.  To the contrary, the

19   record shows that other medically significant factors -- including Plaintiff's obesity and diabetic

20   condition -- could have contributed to his foot problems.  (Decl. David ¶¶ 11, 19.)  Moreover, even

21   if Plaintiff could establish a connection between the treatment of his foot at SQSP during the

22   relevant time period and the current condition of his foot, he would nevertheless fail to show that a

23   "purposeful act" or "failure to act" by Defendant Griffith resulted in any injuries.  See McGuckin,

24   974 F.2d at 1060.  On three occasions, Defendant Griffith examined Plaintiff, debrided his corn, and

25   applied necessary medication to the affected area.  According to Defendant Griffith's education,

26   training and experience, he did not think that Plaintiff's condition indicated the need for foot surgery.

27   (Decl. Griffith ¶ 9.)  Hence, Defendant Griffith neither purposefully inflicted harm on Plaintiff nor

28   disregarded the risk of harm to Plaintiff by "failing to take reasonable steps to abate it."  See Farmer,

1   511 U.S. at 837.

2       Plaintiff's evidence supports, at most, that Defendant Griffith may have been negligent in his

3   course of treatment.  However, proof of medical malpractice or gross negligence is insufficient to

4   make out a constitutional violation in federal court.  <u>See Wood</u>, 900 F.2d at 1334.

5       Plaintiff has failed to support his burden of raising a genuine dispute of material fact to

6   support his claim that Defendant Griffith's actions rose to the level of deliberate indifference to

7   serious medical needs.  Therefore, Defendant Griffith is entitled to summary judgment.

8                           **b.      <u>Defendant Wilson</u>**

9       Plaintiff alleges that Defendant Wilson failed to provide him a podiatric referral "for months"

10  and refused to follow up properly on Plaintiff's condition.  Defendant Wilson contends that he

11  thoroughly examined Plaintiff, including his foot condition, and referred Plaintiff promptly to a

12  specialist.

13      Plaintiff's claim against Defendant Wilson fails to create a triable issue.  First, the record

14  shows that Plaintiff received a podiatric evaluation with Defendant Griffith only thirty-five days --

15  from July 26, 2006 to August 30, 2006 -- after he attended an appointment with Defendant Wilson;

16  hence, Plaintiff's allegation that he failed to receive an appointment "for months" is without merit.

17      Second, Plaintiff does not establish that Defendant Wilson's actions rose to the level of

18  deliberate indifference.  In particular, Plaintiff's argument that Defendant Wilson did nothing more

19  than refer Plaintiff to a specialist, Defendant Griffith, finds no support in the record.  The record

20  establishes that Defendant Wilson thoroughly examined Plaintiff on July 26, 2006.  Defendant

21  Wilson observed bipedal bunions, which he considered a "minor" and "non-acute" problem caused

22  by wearing ill-fitting shoes.  Defendant Wilson then promptly submitted a referral to a podiatrist for

23  routine callus trimming.  About a month thereafter, Plaintiff attended an evaluation with Defendant

24  Griffith.  Hence, Plaintiff fails to present evidence that Defendant Wilson denied, delayed or

25  intentionally interfered with his treatment.  <u>See McGuckin</u>, 974 F.2d at 1062.  Furthermore,

26  Plaintiff's argument that Defendant Wilson should have done more to follow-up on Plaintiff's

27  "minor" and "non-acute" condition represents no more than a difference of medical opinion, which,

28  as explained above, does not give rise to a § 1983 claim.  <u>See Franklin</u>, 662 F.2d at 1344.

United States District Court<br>For the Northern District of California

United States District Court

For the Northern District of California

1    Finally, Plaintiff's evidence against Defendant Wilson suggests that Defendant Wilson may

2  have at most been negligent.  However, as mentioned above, proof of medical malpractice or gross

3  negligence is insufficient to make out a constitutional violation.  See Wood, 900 F.2d at 1334.

4    Plaintiff has failed to support his burden of raising a genuine dispute of material fact to

5  support his claim that Defendant Wilson's actions rose to the level of deliberate indifference to

6  serious medical needs.  Therefore, Defendant Wilson is entitled to summary judgment.

7                              **c.     Defendant David**

8    Plaintiff alleges that Defendant David failed to take action in remedying his foot problems

9  between March 2007 and February 2008, and failed to provide him adequate pain medication.

10  Defendant David claims that she provided adequate care under the circumstances.

11    Plaintiff's claim against Defendant David fails to create a triable issue.  First, the record

12  indicates, among other things, that from April 4, 2007 through September 4, 2007, Defendant David

13  conducted thorough examinations of Plaintiff's foot; prescribed anti-fungal cream, Ibuprofen, and

14  better-fitting shoes; and referred Plaintiff to a podiatrist for treatment of his sore small toe.  Hence,

15  Plaintiff's claim that Defendant David took "no action" is unsupported.

16    Second, Plaintiff does not provide sufficient evidence showing that Defendant David's course

17  of treatment was medically unacceptable under the circumstances.  See Toguchi, 391 F.3d at 1058;

18  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 551 U.S. at 837), cert. denied,

19  519 U.S. 1029 (1996).  Defendant David examined Plaintiff, provided him with pain medications

20  and better-fitting shoes, and ensured that he was examined by a podiatrist within a reasonable

21  amount of time.  Plaintiff offers no evidence that this level of care was medically unacceptable or

22  that Defendant David undertook this treatment in conscious disregard of an excessive risk to his

23  health.  See id.  Rather, Plaintiff repeatedly asserts that he believed that foot surgery was necessary.

24  Plaintiff bases this preference on the recommendation given by Dr. Pratt during a high-risk patient

25  review.  However, he does not offer evidence showing that Dr. Pratt believed foot surgery

26  "medically necessary."  To the contrary, Defendants provide evidence that such surgery was

27  recommended "if appropriate by podiatrist."  (Decl. David, ¶ 19; Gerbert  ¶ 6(p).)  And in this case,

28  Plaintiff's podiatrist, Defendant Griffith, did not believe surgery was appropriate and thus did not

**United States District Court**

For the Northern District of California

1   recommend it.  (Decl. Griffith ¶ 9.)  As explained above, Plaintiff's contention that he should have

2   received more follow-up care and different pain medication, represents nothing more than a

3   difference of medical opinion, which, again, does not amount to a § 1983 claim.  See Franklin, 662

4   F.2d at 1344.

5       Finally, Plaintiff's evidence supports that Defendant David may have at most been negligent

6   in his course of treatment, which is insufficient to make out a constitutional violation.  See Wood,

7   900 F.2d at 1334.

8       Plaintiff has failed to support his burden of raising a genuine dispute of material fact to

9   support his claim that Defendant David's actions rose to the level of deliberate indifference to

10  serious medical needs.  Therefore, Defendant David is entitled to summary judgment.

11      **B.**      **Supervisory Liability**

12          **1.**      **Applicable Law**

13      A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the

14  constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful

15  conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th

16  Cir. 1991) (en banc) (citation omitted).  A supervisor therefore generally "is only liable for

17  constitutional violations of his subordinates if the supervisor participated in or directed the

18  violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d

19  1040, 1045 (9th Cir. 1989).

20      Where a plaintiff alleges a constitutional deprivation due to a failure to train or supervise, to

21  prevail the plaintiff must demonstrate an affirmative link between the deprivation and the adoption

22  of a plan or policy, express or otherwise, showing the authorization or approval of such misconduct.

23  Bergquist v. County of Cochise, 806 F.2d 1364, 1369-70 (9th Cir. 1986), disapproved of on other

24  grounds Canton v. Harris, 489 U.S. 378, 388 (1989).  The required causal connection between

25  supervisor conduct and the deprivation of a constitutional right is established either by direct

26  personal participation or by setting in motion a "series of acts by others which the actor knows or

27  reasonably should know would cause others to inflict the constitutional injury."  Id. at 1370.

28          **2.**      **Analysis**

United States District Court

For the Northern District of California

1    Plaintiff alleges that Defendants Tilton, Ayers, Petrakis, Welch, Saylor and Kanan

2  ("Supervisory Defendants") are liable as supervisors because they were in positions of authority to

3  know of Plaintiff's foot problems, but failed to ensure that he was provided adequate care.  (Compl.

4  at 6-7.)  Plaintiff also claims that Defendant Saylor, who was CMO in 2008, failed to provide

5  Plaintiff medications when he was paroled on February 23, 2008.  (Id. at 5.)

6    The Supervisory Defendants argue that Plaintiff fails to establish the underlying deliberate

7  indifference claim.  Moreover, even if Plaintiff could demonstrate deliberate indifference, these

8  Defendants cannot be held liable for a § 1983 claim as supervisors because he fails to show that they

9  participated in the alleged constitutional deprivations against him or knew about the constitutional

10  violations but failed to remedy them.

11    First, as explained above, Plaintiff has failed to create a genuine dispute of material fact as to

12  whether Defendants Griffith, Wilson and David were deliberately indifferent to his serious medical

13  needs.  Hence, in the absence of a showing of deliberate indifference, the Supervisory Defendants

14  could not have known of or failed to remedy Plaintiff's alleged constitutional violations.  Second,

15  even if Plaintiff created a triable issue as to the deliberate indifference claim, Plaintiff fails to show

16  that these Defendants participated in, directed, or knew about and failed to remedy the situation, as

17  explained below.

18    **a.    Defendant Tilton**

19    Plaintiff alleges that Defendant Tilton was on notice that he was receiving inadequate

20  medical care and failed to remedy the situation.  Plaintiff's allegation, however, fails on several

21  grounds.

22    First, Defendant Tilton was not responsible for prisoners' medical care for the duration of the

23  Plata Receivership Order.[6]  (Decl. Dodd, Ex. CC, "Order Appointing Receiver" at 4.)  Second, even

24  if Defendant Tilton were responsible for prisoners' medical care, there is no evidence that Defendant

25  Tilted endorsed a plan or policy that permitted the mistreatment of Plaintiff's foot problems.  See

26  Bergquist, 806 F.2d at 1369-70.  Nor is there evidence that Defendant Tilton knew or should have

27  known from the letters that Plaintiff allegedly sent him that the numerous medical examinations and

28

[6] See Plata v. Brown, Case No. C 01-1351 TEH (N.D. Cal).

treatments Plaintiff received would "inflict constitutional injury." Id. at 1370.  Finally, even if Defendant Tilton had received Plaintiff's letters, reading them and failing to take action do not rise to the level of a constitutional violation, because Plaintiff has presented no evidence that Defendant Tilton actually recognized that there was any risk of constitutionally prohibited injury.  As explained above, Plaintiff has failed to produce sufficient evidence that his foot care was constitutionally inadequate under the circumstances.  Defendant Tilton, therefore, would have been reasonable in concluding that Plaintiff was receiving adequate care.

Consequently, in the absence of evidence to the contrary, Plaintiff has failed to demonstrate a "sufficient causal connection" between Defendant Tilton's alleged oversight as the CDCR Secretary and any constitutional violation against Plaintiff.  See Redman, 942 F.2d at 1446.  Defendant Tilton is therefore entitled to summary judgment.

### b.      Defendants Ayers, Petrakis and Welch

Plaintiff alleges that Defendants Ayers, Petrakis and Welch had "actual and constructive knowledge" that Plaintiff was not receiving appropriate medical care because these Defendants received and read a copy of his state habeas petition, which detailed his need for treatment. Moreover, one of these Defendants -- Defendants Ayers -- allegedly received a court order from the California Court of Appeal that explained Plaintiff's condition, in addition to numerous 602 appeals and letters from Plaintiff that further elaborated on his condition.

Plaintiff's conclusory assertions in his complaint, however, fail to establish that Defendants Ayers, Petrakis or Welch participated in his medical care or even knew of his condition.  First, Plaintiff has not demonstrated that any of these Defendants is a doctor or a registered nurse.  Nor does Plaintiff show that any of these Defendants are responsible for designing courses of treatment in response to prisoners' medical needs.  Second, there is no evidence that these Defendants knew or should have known, on the basis of the letters and other documents they received from Plaintiff, that the numerous medical examinations and treatments he received would "inflict constitutional injury." Bergquist, 806 F.2d at 1370.  Nor is there evidence that these Defendants adopted a plan or policy that authorized the mistreatment of Plaintiff's foot.  Id. at 1369-70.

Furthermore, even if they knew of Plaintiff's situation, such a situation presented no apparent

United States District Court

For the Northern District of California

1   risk of constitutionally prohibited injury.  Plaintiff was complaining about foot problems caused by

2   calluses and corns, a condition deemed by Defendants Wilson, David and Griffith as "minor" and

3   "non-acute."  Therefore, these Defendants' failure to intervene to remedy the situation, even if they

4   knew about it, would not amount to a constitutional violation; the situation entailed no apparent

5   constitutional injury.   Plaintiff told Defendants Ayers, Petrakis and Welch that he thought he needed

6   surgery; Defendant Griffith, on the basis of his training, education and experience**,** believed that a

7   conservative course of treatment of Plaintiff's foot was acceptable.  (Decl. Griffith ¶ 9.)  Hence, at

8   most, Plaintiff informed Defendants Ayers, Petrakis and Welch about a difference of medical

9   opinion, which is insufficient to give rise to a constitutional injury.  See Franklin, 662 F.2d at 1344.

10      Consequently, Defendants Petrakis, Welch and Ayers are entitled to summary judgment

11   because Plaintiff fails to create a "sufficient causal connection" between the actions of these

12   Defendants and his alleged constitutional injury.

13                          **c.      Defendants Kanan and Saylor**

14      Plaintiff alleges that from June 2006 through February 23, 2008, Defendants Kanan and

15   Saylor, who were CMOs during the relevant period, failed to remedy his constitutionally inadequate

16   foot care and refused to follow a doctor's recommendation that Plaintiff undergo foot surgery.

17   Plaintiff, however, fails to provide sufficient evidence that Defendants Kanan and Saylor

18   participated in his medical care, directed his course of treatment, or knew of his constitutionally

19   inadequate medical treatment and failed to remedy it.  First, Plaintiff makes conclusory and self-

20   serving assertions that Defendant Kanan "intentionally withheld treatment" from him without

21   specifying in what way she participated in his medical care beyond the general responsibility she

22   assumed for all prisoners as SQSP's CMO.  Similarly, Plaintiff provides no evidence that Defendant

23   Saylor participated in or knew of Plaintiff's treatment, except to say that Defendant Saylor generally

24   was "responsible" for his medical care at SQSP from June 28, 2006 through February 23, 2008.

25      Second, the Court finds unavailing Plaintiff's argument that Defendants Kanan and Saylor

26   are liable as supervisors because they knew of Dr. Pratt's 2007 "recommendation" for foot surgery

27   but refused to follow it.  The facts do not establish that failure to perform foot surgery to alleviate

28   pain from corns and calluses, even if recommended, is unconstitutional.  That one doctor

26

1    recommends a course of treatment does not entail that the treatment is necessary, urgent, or even

2    likely to decrease Plaintiff's pain and suffering.  Defendants Kanan and Saylor, at most, may have

3    been aware of a difference of medical opinion.  But, as mentioned above, differences of medical

4    opinion do not give rise to constitutional violations under § 1983.  See Franklin, 662 F.2d at 1344.

5    Accordingly, Plaintiff has failed to create a triable issue as to whether Defendants Kanan and Saylor

6    participated in Plaintiff's treatment or knew of constitutional violations against Plaintiff yet failed to

7    remedy them.  Defendants Kanan and Saylor are therefore entitled to summary judgment.

8                    **d.        Defendant Saylor -- Failure to Provide Medications on Parole**

9           Plaintiff alleges also that Defendant Saylor, SQSP's CMO when Plaintiff was released on

10   parole, failed to provide him with medications prior to being paroled.  Defendants argue that

11   Plaintiff did not specify the identity of the prison official who failed to provide him his medications.

12   However, Plaintiff clearly named Defendant Saylor in the May 3, 2010 amendment to his complaint;

13   specifically stating, "Plaintiff further contends that Defendant Saylor . . . whichever was chief

14   medical [officer] in Feb - 2008 failed to comply with Dr. Rand's . . . request for parole medications

15   to be provided to him on February 23, 2008.  (Am. to Compl., "Claims," at 2.)

16          The obligation to provide constitutionally adequate medical care does not end at the prison

17   gate.  See Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir. 1999).  The state must provide a

18   prisoner who is being released and who is receiving and continues to require medication with a

19   supply sufficient to ensure that he has that medication available during the period of time reasonably

20   necessary to permit him to consult a doctor and obtain a new supply.  See id.

21          Plaintiff nevertheless fails to provide sufficient evidence that Defendant Saylor's failure to

22   provide him parole medications on February 23, 2008 amounted to deliberate indifference to serious

23   medical needs.  Plaintiff's medications were slightly delayed, and prison staff properly informed him

24   that he could receive them within two days.  While it is unfortunate that Plaintiff's medications were

25   unavailable at the time he was released from SQSP, he has not proven that this delay amounts to an

26   unconstitutional denial of medications.  Moreover, within the same day that Plaintiff was released,

27   he obtained all of his medications elsewhere and suffered no harm during the brief period that he

28   lacked them.  The Court therefore finds that this slight delay in Plaintiff's receiving medications

**United States District Court**
For the Northern District of California

27

1   constitutes at most <u>de minimis</u> harm that falls short of a constitutional violation.

2          Accordingly, Defendant Saylor, at most, may have been negligent because he failed to timely

3   provide parole medications, but negligence is insufficient to make out a constitutional violation.  <u>See</u>

4   <u>Wood</u>, 900 F.2d at 1334.  In the absence of any evidence showing that Defendant Saylor and any

5   prison officials under his supervision intentionally or deliberately denied necessary parole

6   medications from Plaintiff, the Court finds that Plaintiff has failed to create a triable issue on this

7   point.  Defendant Saylor is therefore entitled to summary judgment.

8          **C.      <u>Qualified Immunity</u>**

9          Defendants claim that summary judgment is also proper in this case because they are entitled

10  to qualified immunity from liability for civil damages.  The defense of qualified immunity protects

11  "government officials . . . from liability for civil damages insofar as their conduct does not violate

12  clearly established statutory or constitutional rights of which a reasonable person would have

13  known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The threshold question in qualified

14  immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the

15  facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier v. Katz</u>, 533 U.S.

16  194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the

17  plaintiff has alleged the deprivation of an actual constitutional right and whether such right was

18  "clearly established."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009) (overruling the sequence of the

19  two-part test that required determination of a deprivation first and then whether such right was

20  clearly established, as required by <u>Saucier</u> and holding that a court may exercise its discretion in

21  deciding which prong to address first, in light of the particular circumstances of each case).  The

22  relevant, dispositive inquiry in determining whether a right is clearly established is whether it would

23  be clear to a reasonable officer that her/his conduct was unlawful in the situation he confronted.

24  <u>Saucier</u>, 533 U.S. at 201-202.

25         Assuming <u>arguendo</u> that Plaintiff suffered a deprivation of constitutional proportion, the

26  Court next considers whether Defendants' conduct was clearly unlawful.  Plaintiff alleges that

27  Defendants David, Wilson and Griffith failed to follow up properly on his foot care and refused to

28  perform a foot operation recommended by another doctor.  Defendants argue that they provided

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    appropriate care -- including the provision of routine callous trimming, pain medications, and a

2    prescription for better-fitting shoes --  and that they properly monitored Plaintiff's condition

3    throughout the relevant time period.  Because they provided extensive and timely care appropriate to

4    Plaintiff's condition, reasonable prison doctors in Defendants David, Wilson and Griffith's positions

5    would have reasonably believed that their actions were lawful under the circumstances that they

6    confronted.  Consequently, Defendants David, Wilson and Griffith are entitled to qualified

7    immunity.

8         Plaintiff also alleges that Defendants Tilton, Welch, Petrakis, Ayers, Kanan and Saylor knew

9    of Plaintiff's constitutionally inadequate medical care and nevertheless failed to remedy the situation.

10   These Supervisory Defendants argue that they did not know of Plaintiff's condition, because they

11   had never read or been informed about the letters, 602 appeals, or court documents describing

12   Plaintiff's condition.  Reasonable prison officials in these Supervisory Defendants' positions, not

13   knowing of Plaintiff's condition, would have believed that their actions were lawful under the

14   circumstances that they confronted.  Moreover, even if they had known of Plaintiff's condition,

15   reasonable prison officials in these Supervisory Defendants' positions could reasonably believe that

16   the care that Plaintiff was receiving was lawful and that their decision not to remedy the alleged

17   constitutional violation was likewise lawful.  Consequently, Defendants Tilton, Welch, Petrakis,

18   Ayers, Kanan and Saylor are also entitled to qualified immunity.

19        Finally, Plaintiff alleges that Defendant Saylor, as CMO, oversaw prison staff who denied

20   Plaintiff parole medications when he was released from SQSP on February 23, 2008.  However,

21   Plaintiff left SQSP of his own will and with the apparent knowledge that his medications would be

22   available if he went to a hospital emergency room, which he did within two days of his release.

23   Consequently, a reasonable CMO in Defendant Saylor's position would have believed that his

24   actions were lawful under the circumstances that he confronted.  Therefore, Defendant Saylor is

25   similarly entitled to qualified immunity.

26        **D.      Conclusion Relating to Federal Claims**

27        Accordingly, Defendants David, Wilson, Griffith, Tilton, Ayers, Petrakis, Welch, Saylor and

28   Kanan's motions for summary judgment as to Plaintiff's remaining claims of deliberate indifference

to serious medical needs and supervisory liability are GRANTED.  Therefore, all federal claims

stemming from the allegations in his complaint and amendment to the complaint have been resolved.

### E.     State Law Claims

Plaintiff's remaining claims under California law are dismissed under the authority of 28

U.S.C. § 1367(c)(3).  See Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) (court may decline to

exercise supplemental jurisdiction over related state-law claims under § 1367(c)(3) once it has

dismissed all claims over which it has original jurisdiction); see also Acri v. Varian Associates, Inc,

114 F.3d 999, 1000 (9th Cir. 1997) (although discretionary, claims under state law should be

dismissed when associated federal claims are dismissed before trial).  The dismissal is without

prejudice; Plaintiff may proceed with his state law claims in state court.  See Reynolds v. County of

San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (dismissal of pendent state claims following

dismissal of federal claims must be without prejudice), rev'd on other grounds by Acri v. Varian

Associates, Inc., 114 F.3d 999 (9th Cir. 1997).

### PLAINTIFF'S PENDING MOTIONS

As mentioned above, Plaintiff has filed two motions: (1) a motion for an extension of time to

compel discovery from Defendant Kanan; and (2) an "Emergency Motion" to stay the Court's ruling

on Defendants' joint motion for summary judgment.

### I.     Motion for an Extension of Time to Compel Discovery from Defendant Kanan

On July 15, 2011, Defendant Kanan filed a joinder to Defendants' joint motion for summary

judgment.  In response, on July 21, 2011, Plaintiff filed a document entitled, "Request to Sever the

Claims Against Defendant Rene [sic] Kanan from the Present Complaint."  In that motion, Plaintiff

argues that he has not had sufficient opportunity to obtain discovery from Defendant Kanan.  The

Court construes this motion as a request for an extension of time to compel discovery from this

Defendant.

On Plaintiff's view, discovery from Defendant Kanan would strengthen his argument that he

suffered from a serious medical need from June 28, 2006 through February 23, 2008.  Indeed,

Plaintiff characterizes Defendant Kanan as "an important witness in this case" because she allegedly

requested that Plaintiff be examined by Dr. Pratt.  However, given that the Court has found in this

United States District Court
For the Northern District of California

1  Order that Plaintiff suffered from a serious medical need during the relevant time period, his concern

2  with respect to obtaining discovery from Defendant Kanan is moot.

3       Furthermore, Plaintiff fails to explain what evidence in particular Defendant Kanan might

4  provide that would bolster his deliberate indifference claim against her.  Rather, Plaintiff merely

5  reiterates his theory that Defendant Kanan knew of Dr. Pratt's recommendation for foot surgery and

6  failed to act on it.  The Court has already considered this theory and concluded that Plaintiff has

7  failed to provide sufficient evidence that Defendant Kanan deliberately inflicted harm, delayed

8  treatment with the intention of inflicting harm, or delayed treatment in disregard of the serious risk

9  that harm would result from such delay.

10      Accordingly, the Court DENIES Plaintiff's request for an extension of time within which to

11  compel Defendant Kanan to produce the aforementioned discovery (docket no. 333).

12  **II.    "Emergency" Motion to Stay**

13      On July 26, 2011, Plaintiff filed a motion entitled, "Emergency Request to Stay the Court's

14  Ruling on the Defendants Motion (Joint) for Summary Judgment or, Alternatively, Partial Summary

15  Judgment for 14 Days or Until Such Time That the Plaintiff Is Able to Secure for the Courts

16  Consideration Pivotal Information Previously Unavailable, or Alternatively, Reconsideration of

17  Summary Judgment Decision," requesting that the Court stay its ruling on Defendants' joint motion

18  for summary judgment.  Plaintiff claims that he needs more time to produce evidence to support his

19  contention that Defendants Griffith, Wilson and David were deliberately indifferent by failing to

20  perform necessary x-rays and surgery on his foot.

21      As explained above, Plaintiff's argument fails because Plaintiff does not present evidence

22  that refusing to provide surgery or x-rays under the circumstances Defendants faced from June 28,

23  2006 through February, 23 2008 was "medically unacceptable."  Instead, Plaintiff has produced

24  some evidence that at least one doctor may have "recommended" foot surgery in 2007.  (Decl.

25  David, ¶ 19.)  However, Plaintiff neither produces evidence, nor claims that he is able to produce

26  evidence, that Defendants' failure to perform surgery or take any allegedly necessary x-rays was

27  medically unacceptable under the circumstances.  Failing to heed a medical recommendation

28  qualified with the phrase, "if appropriate by podiatrist," as explained above, does not amount to

deliberate indifference.  (Id.)  At most, as mentioned above, Defendants Griffith, Wilson and David may have been negligent in their course of treatment; however, negligence is insufficient to state an Eighth Amendment violation.

Accordingly, the Court DENIES Plaintiff's "Emergency" motion (docket no. 338) requesting that the Court stay its ruling on Defendants' joint motion for summary judgment.

## CONCLUSION

In light of the foregoing, the Court orders as follows:

1.     All claims against Defendant Tootell are DISMISSED with prejudice pursuant to the settlement reached on December 29, 2010.  As noted above, Plaintiff's claims against Defendant Kelso have previously been dismissed with prejudice pursuant to the Court's May 13, 2011 Order.

2.     Defendants David and Wilson's motion for summary judgment (docket no. 185) is GRANTED.  The remaining Defendants' joint motion for summary judgment (docket no. 277) is also GRANTED.  In addition, Defendant Kanan's motion for summary judgment by way of joinder (docket no. 325) is GRANTED.

3.     Because Plaintiff's federal claims stemming from the allegations in his complaint and amendment to the complaint have all been resolved,[7] all claims under California law are DISMISSED without prejudice to refiling them in state court.

4.     Plaintiff's motion entitled, ""Request to Sever the Claims Against Defendant Rene [sic] Kanan from the Present Complaint" (docket no. 333), which has been construed as a request for an extension of time to compel discovery from Defendant Kanan, is DENIED.

5.     Plaintiff's "Emergency" motion (docket no. 338) -- requesting that the Court stay its ruling on Defendants' joint motion for summary judgment -- is DENIED.

6.     The Clerk shall enter judgment, terminate all pending motions, and close the file.

7.     This Order terminates Docket nos. 185, 277, 325, 333 and 338.

IT IS SO ORDERED.

*Saundra B Armstrong*

---

[7]As mentioned above, the Court previously granted Defendants Russell and Sillen's motion for summary judgment in its Order dated March 31, 2011.  In the present Order, the Court has found that Defendants David, Wilson, Griffith, Tilton, Ayers, Petrakis, Welch, Saylor and Kanan are entitled to summary adjudication of Plaintiff's remaining federal claims of deliberate indifference to serious medical needs and supervisory liability.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   DATED: 9/30/11
                                                    _____
2                                                   SAUNDRA BROWN ARMSTRONG
                                                    United States District Judge
3

4

5

6   UNITED STATES DISTRICT COURT
    FOR THE
7   NORTHERN DISTRICT OF CALIFORNIA

8   DARRYL L. GOLDSTEIN,
                                                        Case Number: CV07-05958 SBA
9              Plaintiff,
                                                        **CERTIFICATE OF SERVICE**
10     v.

11  ROBERT SILLEN, ET AL. et al,

12             Defendant.
                                    _____/
13

14  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.
15
    That on October 7, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
16  copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
    envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
17  located in the Clerk's office.

18

19
    Darryl Lee Goldstein P-79097
20  California State Prison - Solano
    2100 Peabody Rd.
21  P.O. Box 4000
    Vacaville,  CA 95696
22
    Dated: October 7, 2011
23
                                                    Richard W. Wieking, Clerk
24                                                  By: LISA R CLARK, Deputy Clerk

25

26

27

28